**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES VAUGHAN, III, | ) | CASE NO. 1:10-CV-0609 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CITY OF SHAKER HEIGHTS, | ) | |
| *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| | ) | |
| | ) | |

On March 16, 2011, this matter was referred pursuant to Local Rule 72.1, for supervision of all pretrial matters to include recommendations on any dispositive motions.  (Doc. No. 26.) Pending before the Court are four motions to dismiss, which are fully briefed.  (Doc. Nos. 16, 18, 19, 20.)  For the following reasons the Court recommends that the motions to dismiss be denied in part and granted in part.

## I.  Procedural Background

### A.  The Amended Complaint

On April 5, 2010, Plaintiff James Vaughan, III ("Vaughan"), filed an Amended Complaint against two Shaker Heights police officers, Detective Douglas K. Hyams ("Hyams") and Corporal Jody Srsen ("Srsen"), in their individual and official capacities, the City of Shaker

Heights ("Shaker Heights"), William T. Mason ("Mason"), Cuyahoga County Prosecutor, in his individual and official capacity, the Cuyahoga County Commissioners[1] ("the Commissioners"), and John and Jane Does 1-10 (all collectively referred to as "Defendants").  (Doc. No. 3.)

The Amended Complaint asserts the following causes of action: (1) violation of Vaughan's civil rights pursuant to § 1983 based on the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (2) violation of his constitutional rights as set forth in 42 U.S.C. §§ 1985 and 1988[2], as well as a conspiracy to foster and promote perjured testimony; (3) malicious prosecution under state law; (4) intentional infliction of emotional distress; and (5) indemnification.[3]  (Doc. No. 3.)  Counts One through Four are brought against all Defendants, while Count Five names only the City of Shaker Heights.  Vaughan seeks compensatory and punitive damages.  *Id.* at 3.

**B.   Motions To Dismiss**

On July 27, 2010, Defendants Cuyahoga County Commissioners and William T. Mason, ("Cuyahoga County Defendants") filed a Motion to Dismiss.  (Doc. No. 16.)  On July 29, 2010, Defendants City of Shaker Heights, Douglas K. Hyams, and Jody Srsen ("Shaker Heights Defendants") each filed a separate Motion to Dismiss.  (Doc. No. 18, 19, and 20.)  On September

---

[1]The Court takes note that on January 1, 2011, the Cuyahoga County Board of Commissioners was replaced by a County Executive and Council.

[2]42 U.S.C. § 1988(a) merely "instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts."  *Moor v. County of Alameda*, 411 U.S. 693, 703 (1973).  It does not create a federal cause of action for alleged deprivation of Constitutional rights.  *Id.*  42 U.S.C. § 1988(b) provides that a court may allow attorney fees to the prevailing party in §§ 1983 or 1985 actions.

[3]The Counts in Vaughan's Amended Complaint are misnumbered; he skips from Count Four to Count Six.  (Doc. No. 3.)  The Court, therefore, will refer to Vaughan's Count Six as Count Five.

14, 2010, Vaughan filed a consolidated Opposition to all the motions.  (Doc. No. 22.)  On

October 7, 2010, Shaker Heights Defendants filed a Joint Reply.  (Doc. No. 25.)

## II.  Factual Allegations

The Amended Complaint contains the following allegations:

On September 10, 2006, Vaughan was visiting Kelly Ross at her home on Palmerston Road

in Shaker Heights.  (Am. Compl. ¶11.)  Ross and her friend, Serena Miller ("Miller") were

drinking heavily and holding a séance.  (Am. Compl. ¶12.)  Miller's nine-year-old daughter,

("M.M.") fell asleep and Miller asked Vaughan to put her to bed.  (Am. Compl. ¶13.)  Vaughan

did so.  *Id.*

Later, Miller claimed that M.M. accused Vaughan of digitally penetrating her vagina and

anus.  (Am. Compl. ¶14.)   The Shaker Heights Police responded at approximately 6:50 a.m. on

September 10, 2006, less than two hours after the incident had allegedly occurred.  *Id.*  Corporal

Srsen arrived at Ross's home.  (Am. Compl. ¶15.)  Srsen spoke with Miller and M.M. and

transported M.M. to University Hospital for an examination.  *Id.*  The hospital examination

showed no signs of trauma to M.M.   (Am. Compl. ¶16.)

The Shaker Heights Police assigned Hyams to investigate the allegations as lead detective.

(Am. Compl. ¶17.)  Hyams testified that he spent a total of forty-five minutes investigating the

allegations.  *Id.*  He also claimed to have worked on the case from September 11, 2006, until he

testified before the Grand Jury on October 11, 2006.  *Id.*  Srsen testified that she spent forty-five

minutes at the crime scene the morning the incident was reported.  (Am. Compl. ¶18.)

Between September 11, 2006, and October 11, 2006, M.M. met with Summit County Social

Worker, Terrie Stout ("Stout").  (Am. Compl. ¶22.)  M.M. did not indicate to Stout that Vaughan

3

had raped her.  In fact, M.M. told Stout that Vaughan had touched her outside her underwear and did not report that Vaughan had penetrated her.  (Am. Compl. ¶23.)  Stout became aware that M.M.'s mother was frustrated with Hyams because Hyams did not believe that there was proof to support a rape charge.  (Am. Compl. ¶25.)  Stout also learned that Miller and her ex-husband planned on "pulling some strings" in order to influence a judge to charge Vaughan with rape. (Am. Compl. ¶26.)

On September 20, 2006, Stout reported the result of her assessment of M.M. to Hyams. (Am. Compl. ¶27.)  During the phone call, Stout learned that Hyams also believed there was no evidence to proceed against Vaughan.  *Id.*  The same day, Stout closed her file on M.M., noting that there was no trauma evident.  (Am. Compl. ¶29.)

Vaughan was arrested by the Shaker Heights Police Officers on September 23, 2006.  (Am. Compl. ¶19.)  He was charged with Gross Sexual Imposition.  *Id.*  Following a bind-over from Shaker Heights Municipal Count, on October 11, 2006, a Cuyahoga County Grand Jury indicted Vaughan for Rape under Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(B) based only on the perjured testimony of Hyams.  (Am. Compl. ¶¶20-21.)  The relevant part of the testimony is as follows:

**Prosecutor Myles**:

Q:      Calls police, so then the police come.  So, she's interviewed by police, she's interviewed by the doctor and she's interviewed by the Children's Services, all separately?

**Officer Hyams**:

A:      Correct.

**Prosecutor Myles**:

Q:      And she is consistent in that he put his finger inside of her anal area?

**Officer Hyams**:

A:      That is correct.

(Am. Compl. ¶30.)  The Grand Jury indicted Vaughan for Rape.  (Am. Compl. ¶ 31.)  Stout was

not called to testify and no exhibits were shown to the Grand Jury.  (Am. Compl. ¶¶32-33.)

Hyams falsely testified that M.M. consistently reported that Vaughan had put his finger

inside of her anal area.  (Am. Compl. ¶34.)  At all times, Hyams possessed exculpatory

information that contradicted his testimony.  (Am. Compl. ¶35.)

On March 24, 2008, Vaughan's bench trial began.  (Am. Compl. ¶36.)  On March 28, 2008,

Vaughan was convicted of Rape in violation of O.R.C. § 2907.02(A)(1)(B) with sexual predator

specifications and was given a mandatory sentence of life without parole.  *Id.*  He was

immediately incarcerated.  *Id.*

At some point, Vaughan obtained a new legal team.  (Am. Compl. ¶41.)  The new team's

investigator interviewed Stout on May 10, 2008.  (Am. Compl. ¶42.)  Stout disclosed, for the

first time, her assessment of M.M. following the rape allegations.  (Am. Compl. ¶43.)  She

relayed information regarding her conversation with Hyams, where both were frustrated about

the pressure from M.M.'s family to charge Vaughan without supporting evidence.  (Am. Compl.

¶44.)  The investigator learned that Hyams and Srsen never attempted to get involved in the

assessment of M.M. because they "did not want to impede."  (Am. Compl. ¶45.)  Vaughan's new

counsel also learned that Hyams had never met with M.M. or interviewed Vaughan.  (Am.

Compl. ¶¶46-47.)  Srsen had only briefly met with M.M. on the morning of the alleged rape.

(Am. Compl. ¶46.)

On March 17, 2009, a state judge granted a new trial based on the previously unheard testimony of Stout.  (Am. Compl. ¶¶49-50.)  At the conclusion of the second trial, the jury spent an hour deliberating before finding Vaughan not guilty of rape or of any other sexual assault. (Am. Compl. ¶¶50, 62.)

The failure to reveal exculpatory evidence of Stout's social work file was deliberate.  (Am. Compl. ¶ 51.)  The Defendants had a duty to disclose such exculpatory evidence.  (Am. Compl. ¶52.)  On or about February 7, 2007, the Prosecutor's Office responded to written discovery requests, stating it had no evidence that would exculpate Vaughan.  (Am. Compl. ¶53.)  The Prosecutor failed in his duty to seek and disclose exculpatory evidence.  (Am. Compl. ¶54.)  The October 11, 2006, Grand Jury testimony reveals that Hyams did not mention Stout, her findings, or any conversations he had with her.  (Am. Compl. ¶55.)  Hyams failed to disclose that he did not find any evidence to support a rape indictment.  *Id.*

### III.  Applicable Law

### A.   Civil Rule 12(b)(6) Standard

To determine whether a complaint states a claim upon which relief can be granted, the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

In order "to survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements.' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (*quoting in part Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (*quoting in part Twombly*, 127 S.Ct. at 1965).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 1950.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Gunasekera*, 551 F.3d at 466 (*quoting in part Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (*quoting Twombly*, 127 S.Ct. at 1964).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, – U.S. –, 129 S.Ct. at 1950, 173 L.Ed.2d 868.  "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."  *Skinner v. Switzer*, 562 U.S. –, 131 S.Ct. 1289, 179 L.Ed.2d 233, 236 (2011).

Furthermore, "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."  *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (*citing Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999)).  "Federal courts may take judicial notice of proceedings in other courts of record."  *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (*quoting Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)) (citing cases), *cert. denied*, 397 U.S. 1065 (1970)).

## IV.  Analysis

### A.    Request to Consider the Motions to Dismiss as Motions for Summary Judgment

Vaughan contends that the attachments to Hyams' and Shaker Heights' Motions to Dismiss (Doc. Nos. 18, 19) are inappropriate because they present facts outside the pleadings.   (Doc. No. 22 at 2.)  Vaughan relies on *Song v. Elyria* to support consideration of the attachments.  985 F.2d 840 (6th Cir. 1993).

In *Song*, the City of Elyria moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and attached a copy of a prior judgment and affidavits[4] to its motion.  985 F.2d at 841. On appeal of the dismissal of all federal claims, plaintiffs argued that the district court committed a procedural error by not treating defendants' motion to dismiss as a motion for summary judgment.  *Id*. at 842.  The Sixth Circuit held that the materials submitted were not outside the pleadings as they did nothing more than verify and clarify the complaint.  *Id*.  The

---

[4]The affidavits were ones attached to the plaintiffs' complaint, verifying that the statements in the complaint were true.  *Song*, 985 F.2d at 842.

8

materials did not rebut, challenge, or contradict anything in the plaintiffs' complaint. *Id.*
Likewise, the Sixth Circuit has held that a defendant may attach documents to a motion to
dismiss if the documents "are referred to in the plaintiff's complaint and are central to [the]
claim." *Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir. 1999) *(quoting
Weiner v. Klais & Co.* 108 F.3d 86, 89 (6th Cir. 1997)).

Here, the attached documents do not rebut or contradict anything in Vaughan's Amended
Complaint. They simply verify facts alleged in it. Shaker Heights attaches three documents to
its motion -- (1) Vaughan's motion for a new trial; (2) his supplemental and comprehensive
memorandum in support of his motion for a new trial; and, (3) his second supplemental
memorandum in support of a new trial. (Doc. No. 18-1-3.) Hyams attaches to his motion a
partial transcript of the closing argument from Vaughan's first trial. (Doc. No. 19-1.) Vaughan
specifically refers to these documents in his Amended Complaint and his claims revolve around
his obtaining and winning a new trial. Moreover, in Vaughan's opposition brief, he attaches
numerous exhibits from the underlying state court record. (Doc. Nos. 22-1, 2, 3.) As a court
may rely on the authenticity of public records and may take notice of the adjudicatory facts they
provide, *see* Fed.R.Evid. 201(a),(b), the motions to dismiss will not be converted into requests
for summary judgment.

**B.      Motions to Dismiss**

      **1.      Count II - Conspiracy - All Defendants**

The Defendants contend that the Amended Complaint fails to sufficiently allege a
conspiracy to violate Vaughan's civil rights. (Doc. No. 16 at 19-20; Doc. No. 18 at 11-13; Doc.
No. 19 at 13; Doc. No. 20 at 4.) To maintain a conspiracy claim, a plaintiff must set forth facts

to support that there was (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person of equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).  A plaintiff further must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Id.; see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir.1996), *cert. denied*, 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997).  "Conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 2004).

Vaughan's opposition brief is silent as to the conspiracy claim.  Furthermore, the facts alleged in Vaughan's Amended Complaint do not support the elements of civil conspiracy. Vaughan does not allege specific facts, but relies upon his conclusions that the Defendants were involved in a conspiracy.  Reading the allegations and drawing all inferences in the light most favorable to Vaughan, he fails to support an allegation that a conspiracy existed.  Most importantly, Vaughan did not allege that conspiracy was motivated by his race.

Thus, the Court recommends that Count II against all Defendants be dismissed.

**2.      Cuyahoga County Defendants**

The Cuyahoga County Defendants claim that Vaughan has failed to state a claim for relief by application of various defenses, including but not limited to the applicable statute of limitations, as well as the doctrines of prosecutorial immunity, Eleventh Amendment immunity, and qualified immunity.  (Doc. No. 16.)

10

**a.  Statute of Limitations**

The Commissioners argue that Vaughan's Complaint is barred as it was filed outside of the two-year statute of limitations.  They contend that the "wrong" was either the "October 11, 2006 Grand Jury testimony and/or the failure to discover/turn over Ms. Stout's September 20, 2006 findings."  (Doc. No. 16 at 19.)  They contend that Vaughan's complaint, filed March 23, 2010, is beyond the two-year statute of limitations and must be dismissed.  *Id.*

It is well-settled that the statute of limitations applicable to § 1983 actions is the state statute of limitations governing personal injury claims.  *See Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985).  Ohio law, therefore, provides a two year statute of limitations for § 1983 actions.  *See* O.R.C. § 2305.10; *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).

Although Ohio law establishes the applicable limitations period, a federal court must utilize federal procedural law to determine the time of a claim's accrual.  *See Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  Federal procedural law provides that the statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *See Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997) (*quoting Sevier*, 742 F.2d at 273).  In determining when the cause of action commences to accrue in § 1983 cases, a court must look to the event that should have alerted the typical lay person to protect his or her rights.  *See Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991).

Although Vaughan did not address this argument in his opposition, his Amended Complaint states that he first became aware of the exculpatory evidence on May 10, 2008, when his new defense team interviewed Stout.  (Doc. No. 3, Am. Compl., ¶ 43.)  As Vaughan's factual assertions must be taken as true and construed most favorably in his favor, the Court finds that

11

Vaughan's complaint is not time-barred.

**b.    William Mason**

**i.    Count I - Section 1983 - Individual Capacity - Mason**

Vaughan alleges that Mason, in his individual capacity, violated Vaughan's constitutional rights, including, but not limited to those provided in the Fourth, Fifth, Sixth, and Fourteenth Amendments.  (Doc. No. 3 at 13.)  Vaughan contends that Mason was engaged in a policy or practice of misconduct and directly encouraged the alleged misconduct in the Grand Jury proceedings.  *Id.* at 14.  Furthermore, Vaughan contends that Mason failed to properly train and supervise his assistant prosecutors.  *Id.* at 15.  Mason contends he had no personal involvement in the case.  (Doc. No. 13 at 5.)

To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988). *See Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1988) (affirming the dismissal of claims under 42 U.S.C. §1983 against defendants because they were not personally involved.)

Vaughan failed to raise a single allegation that Mason was personally involved in any way with the grand jury proceeding, original criminal trial, or the alleged misconduct relating to the exculpatory evidence.  Mason is not mentioned in his individual capacity at any point in Vaughan's statement of alleged facts.   At most, the Amended Complaint refers to an unnamed "prosecutor."

Vaughan asks this Court, after considering the evidence in the light most favorable to him, to deny Mason's Motion to Dismiss in order to allow him to obtain more facts through

12

discovery, as to the circumstances surrounding the "prosecutor's involvement" in the failure to disclose exculpatory evidence.  (Doc. No. 22 at 36.)  "Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]"- that the pleader is entitled to relief." *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1950 (2009).  Vaughan has failed to put forth *any* facts that support his conclusion that Mason was involved in the alleged misconduct.  This Court will not allow Vaughan's complaint against Mason to survive in order for Vaughan to engage in discovery to determine *if* his allegations have merit when there are no facts pled that would permit the inference of more than a mere *possibility* of misconduct.

Assuming, without finding, that Mason was involved in his personal capacity, he is entitled to prosecutorial immunity.  Recently in *Van de Kamp v. Goldstein*, 129 U.S. 335 (2009), the Supreme Court held that absolute immunity protects a prosecutor when he prepares to initiate a judicial proceeding.  *Van de Kamp* relies on *Imbler v. Pachtman*, 424 U.S. 409 (1976) to explain the reaches of prosecutorial immunity.  Prosecutors are absolutely immune from liability in §1983 suits for actions that are "intimately associated with the judicial phase of the criminal process."  *Imbler*, 424 U.S. at 428, 420.  The grant of immunity stems from a concern that "a defendant will 'transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.'"  *Id.* at 425.  Claims related to §1983 are particularly at issue because "public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."  *Id.* at 424-25.

*Imbler* expressly noted that prosecutorial immunity may not apply when a prosecutor is

engaged in investigative or administrative tasks.  424 U.S. at 431.  However, when a

prosecutor's duties are "intimately associated with the judicial phase of the criminal process,"

prosecutorial immunity applies with full force.  *Id.* at 430.  The *Imbler* Court acknowledges that

"this immunity does leave the genuinely wronged defendant without civil redress against a

prosecutor whose malicious or dishonest action deprives him of liberty.  But the alternative of

qualifying a prosecutor's immunity would disserve a broader public interest."  *Id.* at 427.  Thus,

*Imbler* declined to place the willful suppression of exculpatory evidence outside of the protection

of prosecutorial immunity and removes prosecutors from *civil* liability.  *Id.* at 431, n. 34.  *See*

*Koubritti v. Convertino*, 593 F.3d 459, 468 (6th Cir. 2010) ("The . . . non-disclosure of

exculpatory information [is] certainly entitled to absolute immunity."); *see also Jones v.*

*Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) (a prosecutor's alleged "use of perjured testimony[,]

the non-disclosure of exculpatory information[,]" ... are all "related to the acts of an advocate

and thus come within the area of prosecutorial immunity" based on *Imbler*.)

    The Sixth Circuit has held that prosecutors are immune for the following conduct: (1)

malicious prosecution, *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (*citing Burns v.*

*Reed*, 500 U.S. 478, 485 n. 4, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)); (2) appearances at

probable cause and grand jury hearings, *id.* (*citing Burns*, 500 U.S. at 487, n. 8); (3) professional

evaluation of evidence assembled by police and appropriate presentation of that evidence at trial

or before the grand jury, *id.* (*citing Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606,

125 L.Ed.2d 209 (1993)); (4) preparation of witnesses for trial, *id.* (*citing Higgason v. Stephens*,

288 F.3d 868, 878 (6th Cir. 2002)); and (5) knowing presentation of false testimony at trial, *id.*

(*citing Imbler*, 424 U.S. at 430; *Buckley*, 509 U.S. at 267 n. 3).

14

Prosecutors also have common law absolute immunity concerning state law claims. *O'Connor v. Kelty*, 2010 WL 2650198, *2 (N.D. Ohio Jul. 2, 2010) (*citing Webb v. Greene Cnty. Sheriff's Office*, 494 F.Supp.2d 779, 797 (S.D. Ohio 2007)); *Lesinski v. City of Steubenville*, 2005 WL 1651737 *10 (S.D. Ohio Jul 13, 2005) (*citing Willitzer v. McCloud*, 6 Ohio St.3d 447, 449, 453 N.E.2d 693 (1983) (recognizing possible application of prosecutorial immunity in context of state law claim)).

Mason is protected from Vaughan's allegations by prosecutorial immunity. Vaughan argues that his case is distinguishable from precedent because it is not retaliatory -- it was filed to redress the alleged violation of his constitutional rights and not as a means of revenge. (Doc. No. 22 at 35.) This distinction is irrelevant. Prosecutorial immunity encompasses §1983 cases and the willful suppression of exculpatory evidence is specifically covered. Therefore, if Mason possessed, knew about, or believed there may be exculpatory evidence, he is nonetheless entitled to absolute immunity. Moreover, even if Mason was individually involved in Vaughan's grand jury hearing or criminal trial, Mason's involvement was "intimately associated with the judicial phase of the criminal process," and thus, he is immune.

### ii. Count I - § 1983 - Official Capacity - Mason

Mason argues that he should be dismissed in his official capacity as Vaughan has not established that he has suffered any constitutional violation. (Doc. No 16 at 11.) Assuming Vaughan's rights were violated, Mason asserts that Vaughan failed to allege or adequately identify the offending policy, practice or custom. *Id.; see Van de Kamp* at 861-864 and *Connick v. Thompson*, – U.S. –, 131 S.Ct. 1350 (2011).

Official capacity suits "generally represent . . . another way of pleading an action against an

15

entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  An

official capacity suit is to be treated as a suit against the entity.  *Id.*  However, absolute immunity

is not available for an official-capacity action.  *Id.* at 166-67.

A municipality cannot be held liable under §1983 solely for the actions of its subordinates

under the theory of *respondeat superior*.  *Monell v. New York City Dept. of Social Servs.*, 436

U.S. 658, 692 (1978).   However, an entity may be held liable when its official policies or

customs cause an actor to violate another's constitutional rights.  *Id.* at 708.   This means there

must be a direct causal link between the policy or custom and the alleged constitutional

violation.  *Canton v. Harris*, 489 U.S. 378, 387 (1989).  A constitutional violation that is alleged

to be a policy or custom is so if it evidences a "deliberate indifference" to the rights of others.

*Id.* at 388-89.

There are several areas where a prosecutor, acting in his official capacity, is immune from

civil liability.  First, a prosecutor is immune from §1983 claims stemming from his involvement

in the training or supervision of others, even if such management related back to prosecutorial

activity in a criminal trial.  *Van de Kamp v. Goldstein*, 129 S.Ct. at 861-62; *Monell* at 683.

Recently, based on this immunity, the United States Supreme Court held that a district attorney's

office may not be held liable under § 1983 for failure to train its prosecutors based on a single

*Brady* violation.  *Connick v. Thompson,* 131 S.Ct. 1350, 1358-1366 (2011).

Second, the Eleventh Amendment bars §1983 suits against a state, its agencies, and its

officials sued in their official capacities for damages.  *Kentucky v. Graham*, 473 U.S. 159, 169

(1985).  The Eleventh Amendment states that "[t]he Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

16

United States by Citizens of another State, or by Citizens or Subjects of any foreign state."  U.S. Const. amend. XI.  Despite its seemingly clear text, the United States Supreme Court has interpreted the Eleventh Amendment, in light of "the structure of the original Constitution itself," *Alden v. Maine*, 527 U.S. 706, 728, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), as granting states broad sovereign immunity from federal suits filed by their own citizens as well as citizens of other states.  *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 120–21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  This sovereign  immunity extends to any suit against a state or an entity of the state, regardless of the relief sought.  *Pennhurst*, 465 U.S. at 101.

The Supreme Court has held that Eleventh Amendment sovereign immunity applies not only to states themselves, but also to those government entities that act as "arms of the State." *S.J. v. Hamilton County*, 374 F.3d 416, 419-420 (6th Cir. 2004) (*citing Regents of University of California v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)).

While an "arm of the state" includes some government entities, the term "state" does not include a political subdivision, and counties are political subdivisions.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Clay v. Edward J. Fisher, Jr., M.D., Inc*., 588 F.Supp. 1363, 1365 (S.D. Ohio 1984).  Sovereign immunity typically does not extend to counties or municipal corporations.  *See Buckhannon Bd. and Care Home v. West Virginia Dep't of Health & Human Res*., 532 U.S. 598, 609 n. 10, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (While state officers acting in their official capacity are generally immune from suit, a plaintiff may bring suit against a municipality and other political subdivisions of the state); *Williams v. Stark County Bd. of Comm'rs*, 2001 WL 302035, No.

17

994081 * 1 (6th Cir. Mar. 23, 2001) ("Under Ohio law, ... counties have distinct legal existence apart from the state such that Eleventh Amendment immunity does not generally confer immunity against suit.")

Nonetheless, the Sixth Circuit has ruled that city prosecutors are considered state officials when they are charged with prosecuting state criminal charges and are pursuing their duties of enforcing state law or policy. *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). As a suit against a state is not cognizable under § 1983, Vaughan's § 1983 claim against Mason in his official capacity must be dismissed.

Vaughan alleges that pursuant to policy, practice, habit and/or custom, Mason deliberately and directly encouraged misconduct by his subordinates and failed to train and supervise them. Am. Compl., ¶ 67(a),(b),(d). Vaughan, however, alleged no facts in the Amended Complaint that would support this conclusion. Specifically, Vaughan sets forth no facts demonstrating that Mason encouraged a pattern of misconduct in his office. Further, Vaughan neglected to plea specific facts that would support an allegation of failure to train. Although Vaughan alleges that the prosecutor's office clearly indicated in their written response to document requests that there was no evidence that could exculpate Vaughan, (Doc. No. 3 at 11, ¶53), he does not allege that the prosecutor's office ever had exculpatory information.

Furthermore, Mason cannot be held liable in his official capacity pursuant to *respondeat superior*. He is immune unless Vaughan can put forth sufficient facts to allege Mason, in his official capacity, directly instructed a subordinate to violate Vaughan's constitutional rights. Vaughan raises no facts that would support this inference.

For these reasons, the Court recommends that Count I against Mason, in his individual and

18

official capacity, be dismissed.

### iii.    Count III - Malicious Prosecution - Mason

Count Three raises a malicious prosecution claim, but does not state whether it is brought

pursuant to federal or Ohio law.  Vaughan, in his opposition brief, set forth the elements of a

state law malicious prosecution claim; therefore, the Court addresses it as such.

Under Ohio law, "the elements of the tort of malicious criminal prosecution are: '(1) malice

in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the

prosecution in favor of the accused.'"  *Graham v. Best Buy Stores, L.P.*, 298 F. App'x 487, 497

(6th Cir. 2008).  Consequently, a plaintiff must plead that the defendant instituted or continued

the relevant proceedings.  Moreover, "[t]o be liable for the continuation of criminal proceedings,

a party must actively insist upon or urge the prosecutor to continue the criminal proceedings

once he learns that the charge is not well founded."  *Martin v. Insight Communications Co.,* 2011

WL 1233374, *4 (S.D. Ohio 2011) *(quoting Bacon v. Kirk*, No. 1–99–33, 2000 WL 1648925, at

*21 (Ohio Ct.App. Oct. 31, 2000)).

A political subdivision is liable in damages in a civil action for injury, death, or loss to

person or property allegedly caused by an act or omission of the political subdivision or of any

of its employees in connection with a governmental or proprietary function as follows:  (1)

caused by the negligent operation of a motor vehicle; (2) caused by the negligent performance of

acts by their employees with respect to the proprietary functions of the political subdivisions; (3)

caused by negligent failure to keep public roads in repair or remove obstructions; (4) caused by

negligence of employees that occurs on or within the grounds of a building connected to

government function that is caused by a physical defect in the building; and, (5) civil liability is

expressly imposed upon a political subdivision. *See* O.R.C. § 2744.02(B).

O.R.C. § 2744.03 lists defenses and immunities. Specifically, a "political subdivision is immune from liability if the employee was engaged in a performance of judicial, quasi-judicial, *prosecutorial*, legislative, or quasi-legislative function." O.R.C. § 2744.03(A)(1) (emphasis added). However, immunity is not absolute, and is not applicable if "the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; or . . . the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. O.R.C. § 2744.03(A)(6)(a),(b).

The Ohio Supreme Court has defined malice as (1) the state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty*, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174, 1176 (1987.) Wanton misconduct is the failure to exercise any care whatsoever. *Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.Ed.2d 367 (1977). "Bad faith" is more than mere bad judgment or negligence. *Id*. It connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson v. McDonald*, 144 Ohio App.3d 301, 309, 760 N.E.2d 24 (Ohio Ct. App. 2001). One acts recklessly:

> if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Thompson v. McNeill*, 53 Ohio St.3d 102, 104-05, 559 N.E.2d 705 (Ohio 1990).

20

Furthermore, the Supreme Court of Ohio has held that under O.R.C. § 2744.02, political subdivisions are immune from intentional tort claims.  *Whitler v. McFaul*, 123 Ohio App.3d 199, 204, 703 N.E.2d 866 (1997) (*citing Wilson v. Stark Cty. Dept. of Human Services*, 70 Ohio St.3d 450, 1994-Ohio-394 (1994)).

Mason, in his individual capacity, as alleged in the Complaint, was engaged in prosecutorial duties pursuant to O.R.C. § 2744.03, and is immune from liability.  Moreover, the facts in the Complaint are not sufficient to support the inference that he acted with malice, therefore, he does not fall into an exception as provided in §2744.03(A)(6)(b).

Further, Mason, acting in his official capacity, is a political subdivision as defined by the Ohio Revised Code.  As he does not fit into one of the exceptions, nor do the facts alleged support an inference of malice, he is personally immune from the state law tort claim of malicious prosecution.

The Court recommends that Count III against Mason, in his official capacity, be dismissed.

### iv.    Count IV - Intentional Infliction of Emotional Distress  - Mason

Intentional infliction of emotion distress ("IIED") is a state law intentional tort claim. Pursuant to O.R.C. § 2744, Mason is immune from liability as he was acting in  his official capacity during the relevant time period, and, therefore, is considered to be the same as a political subdivision defined by the Ohio Revised Code.  As Mason does not fit into one of the exceptions, and the facts as alleged do not support an inference of malice, he is personally immune from the state law tort claim of IIED.

The Court recommends that Count IV against Mason be dismissed.

21

### c.    Cuyahoga County Board of Commissioners

#### i.    Count I - § 1983 - The Commissioners

The Cuyahoga County Board of Commissioners is not mentioned in the Amended Complaint at all.  Vaughan has pled no facts that would support an inference that the Commissioners were in any way involved in the alleged misconduct related to the grand jury hearing or the criminal trial.  Nothing links them to Vaughan's arrest or prosecution.  Furthermore, Vaughan does not set forth facts that would support an inference that the Commissioners had any authority over the Prosecutor's Office, let alone any authority over its policies or its method of training employees.  (Doc. No. 13 at 15-18.)

"In actions brought pursuant to 42 U.S.C. §1983 and in direct actions brought under the Constitution, the liability of supervisory personnel and government entities must be based on more than merely the *right* to control."  *Ridgeway v. Union County Com'rs*, 775 F.Supp. 1105, 1110 (S.D. Ohio 1991) (emphasis added); *Slough v. Telb*, 644 F.Supp.2d 978, 999 (N.D. Ohio 2009).  The Amended Complaint does not allege facts that would support the inference that the Commissioners exercised *any* type of control over the Prosecutor's Office, let alone specific control over their policies and procedures.

Lastly, the analysis of the Count I claim against Mason in his official capacity is applicable to the Commissioners as well.  Thus, for the reasons stated above, the Court recommends that Count I against the Commissioners be dismissed.

#### ii.    Count III and IV - Malicious Prosecution/IIED - The Commissioners

The Commissioners, acting in their official capacity, constitute a political subdivision as

22

defined by the Ohio Revised Code.  As they do not fit into one of the exceptions set forth above, nor do the facts as alleged against the Commissioners support an inference of malice, they are immune from the state law tort claims of malicious prosecution and IIED.

For the reasons stated above, the Court recommends that Count III and IV against the Commissioners be dismissed.

### 3.  Shaker Heights Defendants

### a.  Detective Douglas K. Hyams

### i.  Count I - § 1983 - Hyams (Individual and Official Capacity)

Vaughan argues that Hyams is liable pursuant to §1983 because: (1) he gave perjured grand jury testimony, and (2) he failed to disclose apparent and material exculpatory evidence.  (Doc. No. 22 at 22.)  Hyams argues that he is entitled to immunity and that Vaughan failed to state a claim for the disclosure of exculpatory evidence.  (Doc. No 19 at 4-12.)

The Court previously discussed absolute immunity that attaches to a prosecutor.  *See supra* pp. 13-15.  Hyams maintains that this same immunity is applicable to him as a police officer. (Doc. No. 19 at 4-6.)

The Supreme Court has advanced the interest served by absolute immunity--the furtherance of our adversarial legal system--by employing a functional test: "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1995). Those functions more "intimately associated with the judicial phase of the criminal process" are more likely to merit careful consideration for absolute immunity.  *Id*.  In contrast, those functions

23

more "investigative" in nature--searching for "clues and corroboration"--are more removed from the judicial process and merit only qualified immunity. *Id*. at 273, 113 S.Ct. 2606.  The Supreme Court's decision in *Buckley v. Fitzsimmons* refused to extend absolute immunity to prosecutors accused of fabricating expert evidence when the prosecutors were acting in an investigatory fashion rather than as advocates. *Id*. at 275, 113 S.Ct. 2606.

Following the Supreme Court's direction, the Sixth Circuit looks to the "nature of the function performed" in evaluating whether to extend absolute immunity. *See id.* at 269, 113 S.Ct. 2606.  The Sixth Circuit, like most of the circuit courts of appeals, has held that absolute testimonial immunity does not "relate backwards" to "protect [a defendant] for any activities he allegedly engaged in prior to taking the witness stand for his [ ] testimony." *Gregory v. City of Louisville,* 444 F.3d 725, 742 (6th Cir. 2006) *(quoting Mastroianni v. Bowers*, 160 F.3d 671, 677 (11th Cir. 1998) (denying defendant's motions for summary judgment based on absolute and qualified immunity)); *accord Spurlock*, 167 F.3d at 1001.  Subsequent testimony cannot insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence. *Id*.  The Sixth Circuit does not endorse such a self-serving result. *Id*.  "Merely because a state actor compounds a constitutional wrong with another wrong which benefits from immunity is no reason to insulate the first constitutional wrong from actions for redress." *Id.*

In fact, the Sixth Circuit has consistently held that nontestimonial, pretrial acts do not benefit from absolute immunity, despite any connection these acts might have to later testimony. The Sixth Circuit noted in *Alioto v. City of Shively* that the doctrine of absolute immunity would not protect an official accused of falsifying evidence or conspiring to falsify evidence.  835 F.2d 1173, 1174 (6th Cir. 1987).  More than a decade after *Alioto*, the *Spurlock* panel found that efforts

24

to persuade a third-party witness to lie were non-testimonial acts, regardless of the acts'
connection to the third-party witness' later testimony.  *Spurlock*, 167 F.3d at 1002.  The *Spurlock*
case is instructive as it establishes the law in the Sixth Circuit on the extent of absolute
immunity.

   In *Spurlock*, the plaintiffs brought a § 1983 action alleging violations of constitutional
rights under the First, Fourth, Sixth, and Fourteenth Amendments, against defendant police
officers and prosecutors after the plaintiffs' wrongful conviction for first degree murder.
According to the complaint, the defendants procured false testimony and manufactured other
evidence against plaintiffs.  *Id*. at 1002.  After a grand jury indicted plaintiffs based, in part, upon
this false evidence, plaintiffs were tried and convicted of first degree murder, again based, in
part, upon this falsified evidence.  *Id*. at 999-1000.  Subsequently, the plaintiffs were exonerated
for the crime and they pursued the § 1983 action.

   After the district court in *Spurlock* denied absolute and qualified immunity for one of the
defendant police officers, the Sixth Circuit heard the case on interlocutory appeal.  *Id.* at 997.
The *Spurlock* defendant argued that his actions to procure the false testimony of a later trial
witness merited absolute immunity because they were inextricably linked to that later testimony
and the defendant's own testimony at trial.  The *Spurlock* Court rejected that argument, noting
that "[t]he simple fact that acts may ultimately lead to witness testimony does not serve to cloak
these actions with absolute testimonial immunity."  *Id*. at 1001.  The Court further found that "by
virtue of being a witness, [the defendant police officer] is not entitled to absolute immunity in
performing any nontestimonial or pre/post-trial acts.  What plaintiffs, in essence, allege here is
the fabrication of probable cause, and contrary to [the defendant's] arguments, the fabrication of

25

probable cause cannot be immunized by later providing false testimony."  *Id*. at 1004.

The Sixth Circuit has since ruled consistently with the holding in *Spurlock*.  In *Hinchman v. Moore,* the Court ruled that a municipal officer's verbal fabrications as told to a state trooper and to prosecutors were not entitled to absolute immunity, despite the officer's consistent testimony with these fabrications at the plaintiff's later criminal proceedings.  *See Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002).  The Sixth Circuit in *Gregory* upheld *Alioto*, *Spurlock* and *Hinchman,* ruling that absolute immunity for testimony at trial does not "relate back" to shield pretrial, nontestimonial acts such as fabrication of evidence.  *Gregory*, 444 F.3d at 742.

Hyams relies on *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108 (1983).  He argues that *Briscoe* protects police officers from liability under § 1983 as the threat of such liability undermines officers' contributions in performing their job duties.  (Doc. No. 19 at 4-5.)

The *Briscoe* Court held that §1983 does not authorize a convicted defendant to assert a damage claim against police officers for giving perjured testimony at the defendant's criminal trial.  460 U.S. at 340.  The Court noted that public policy and the common law have long protected testifying witnesses from any civil liability that directly flows from their testimony.  *Id*. at 345-346.  The Court further noted that absolute immunity, like prosecutorial immunity, is based on the presumption that "section 1983 lawsuits against police officer witnesses, like lawsuits against prosecutors, could be expected with some frequency," and "defendants often will transform resentment at being convicted into allegations of perjury by the state's official witnesses."  *Id.* at 343, 103 S.Ct. at 1119.  "Subjecting government officials, such as police officers, to damages liability under §1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their public duties."  *Id.*

26

Hyams' reliance on *Briscoe* is misplaced.  *Briscoe* did not hold that a police officer testifying as a witness at the pre-trial level was entitled to absolute immunity.  In addition, *Briscoe* did not consider testimony at a probable cause hearing.  460 U.S. at 328, fn.5.  Rather, as stated previously, *Briscoe's* narrow holding is applicable only to a police officer's perjured testimony *at trial*.  Vaughan's Amended Complaint asserts that based on Hyams' "deliberately detrimental, misleading, manufactured and perjurious testimony, the Grand Jury indicted Vaughan for Rape."  (Doc. No. 3, Am. Compl, ¶ 31.)  As Hyams' testimony was pre-trial – at the grand jury hearing, his testimony clearly falls under *Alioto*, *Spurlock*, *Hinchman*, and *Gregory*, and, therefore, absolute immunity is not applicable.

Hyams also contends that Vaughan's Amended Complaint does not state a claim for failure to disclose exculpatory evidence.  (Doc. No.19 at 6.)  Hyams argues that the information or evidence from the social worker was not apparent, material exculpatory evidence to a reasonable police officer.  (Doc. No. 19 at 9-11.)  Hyams further asserts that Vaughan makes only general allegations that the "Defendants" failed to disclose exculpatory evidence, not that Detective Hyams failed to disclose such evidence to the prosecution.  *Id*.

Failure to disclose exculpatory evidence is a constitutional violation.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  A *Brady* violation has three elements: (1) the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching," (2) the "evidence must have been suppressed by the State, either willfully or inadvertently;" and, (3) "prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Exculpatory evidence is "'evidence favorable to an accused,' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal."  *United States v. Bagley*, 473 U.S. 667,

27

676 (1985).

Police officers who withhold material exculpatory evidence from the prosecution, preventing the evidence from being turned over to the defense, can be held personally liable under § 1983 for a *Brady* violation. *Elkins v. Summit County, Ohio,* 2009 WL 1150114, *4-5 (N.D. Ohio 2009) *(citing Tennison v. City and County of San Francisco*, 548 F.3d 1293, 1301-02 (9th Cir. 2008)); *Porter v. White*, 483 F.3d 1294, 1304 (11th Cir. 2007); *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004); *Newsome v. McCabe*, 256 F.3d 747, 752-53 (7th Cir. 2001).

The Sixth Circuit has held that in a § 1983 claim for a *Brady* violation, a plaintiff can make a claim against police officers for withholding material exculpatory evidence regardless of any bad faith on the part of the officers. Because the *Brady* standard does not require a specific intent, negligence is sufficient to make a § 1983 *Brady* claim. *See Elkins v. Summit County*, Ohio, 2009 WL 1150114, *5 (N.D. Ohio Apr. 28, 2009) ("*Brady* clearly holds that such withholding of evidence violates due process 'irrespective of the good faith or bad faith of the prosecution.'")

Vaughan has alleged sufficient facts to show that Hyams withheld exculpatory evidence, specifically information he had from Stout. Although unnecessary to succeed on a § 1983 claim for a *Brady* violation, the Court finds the evidence sufficient to allow a jury to infer more than mere negligence by Hyams. The Court concludes that negligence is sufficient to make a § 1983 claim for a *Brady* violation because that standard includes no intent requirement. However, even if the § 1983 claim requires a showing of more than mere negligence, specific intent to deprive Vaughan of his constitutional rights is certainly not necessary. *See Elkins at 5; Holt v. Artis*, 843 F.2d 242, 244 (6th Cir. 1988); *see also Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989 ) ("A

28

number of circuits have held recklessness or gross negligence sufficient to state a section 1983 claim; none has held that only intentional misconduct will suffice.").

Hyams, relying on *Moldowan v. City of Warren*, 578 F.3d 351, 377 (6th Cir. 2009), argues that he is not the party responsible for disclosing exculpatory evidence to the defense, that responsibility falling to the prosecution alone.  (Doc. No. 19 at 11-13.).  The *Moldowan* Court, however, held that because police officers play an integral role in ensuring that the state complies with *Brady*, a police officer can be held liable for suppressing exculpatory information. *Id*. at 381.

Here, the Amended Complaint sets forth facts to support that Stout was an apparent and obvious source of exculpatory information to Hyams.  (Am. Compl., ¶¶ 22-29.)  Furthermore, it set forth allegations that Hyams failed to disclose that Stout was a possible source of exculpatory information in a clear manner that Defendants are on notice regarding a *Brady* violation.

The Court concludes that Vaughan has sufficiently alleged facts that Hyams violated his constitutional rights in withholding exculpatory evidence.[5]

### ii.    Count III - Malicious Prosecution - Hyams

"[I]n order to state a cause of action for malicious prosecution in Ohio, four essential elements must be alleged by the plaintiff: (1) malicious institution of prior proceedings against the plaintiff by defendant; (2) lack of probable cause for the filing of the prior lawsuit; (3) termination of the prior proceedings in plaintiff's favor; and (4) seizure of plaintiff's person or property during the course of the prior proceedings."  *Crawford v. Euclid Nat'l Bank*, 483

---

[5]The parties did not address whether qualified immunity is applicable.

29

N.E.2d 1168, 19 Ohio St. 3d 135, 139 (Ohio 1985) (citations omitted);[6] *accord Powell v. Squire,*

*Sanders & Dempsey*, 182 F. 3d 918 (6th Cir., July 16, 1999) (unpublished).

As employees of a political subdivision, police officers are entitled to immunity from state

law claims as long as one of the exceptions in O.R.C. § 2744.03(A)(6)(b) does not apply.

Officers are stripped of their immunity when they act "with malicious purpose, in bad faith, or in

a wanton or reckless manner."  O.R.C. § 2744.03(A)(6)(b).  The Ohio Supreme Court has

defined malice as (1) the state of mind under which a person's conduct is characterized by

hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of

other persons that has a great probability of causing substantial harm.  *Preston v. Murty*, 32 Ohio

St.3d 334, 336, 512 N.E.2d 1174, 1176 (1987.)  Wanton misconduct is the failure to exercise any

care towards those to whom one owes a duty.  *Hawkins v. Ivy*, 50 Ohio St.2d 114, 117-18, 636

N.E.2d 367, 369 (1977).  "Mere negligence is not converted into wanton misconduct unless the

evidence establishes a disposition to perversity on the part of the tortfeasor."  *Rozman v. Sammet*,

26 Ohio St.2d 94, 96-97, 269 N.E.2d 420, 422 (1971).

Vaughan alleges his indictment was obtained "with incomplete information, manufactured

information, information that was not true and without sufficient probable cause to support the

charge of rape."  (Am. Compl., ¶¶ 30, 39.)  He alleges that Hyams' grand jury testimony caused

a wrongful indictment for "Rape, committed with force or threat of force."  (Am. Compl., ¶ 31.)

After his conviction, Vaughan was granted a new trial, partly because the trial court determined

---

[6] The *Crawford* court explained that "the requirement of an arrest of the person or seizure of property in malicious prosecution actions is necessary, as a matter of public policy, to dissuade the multiplicity of counter-suits that could occur in the absence of such a requirement."  *Crawford*, 483 N.E.2d at 1171.

30

that Vaughan's *Brady* rights were violated.  (Am. Compl., ¶¶ 40 62.)  After a new trial, Vaughan was found not guilty of Rape.  (Am. Compl., ¶ 50.)

Furthermore, Vaughan has sufficiently pled facts demonstrating that Hyams is not entitled to immunity pursuant to O.R.C. § 2744.03(A)(6)(b).  (Doc. No. 22 at 39.)  The Amended Complaint states: "Defendants acted with conscious disregard, reckless indifference, and/or malice in not preserving physical evidence that was critical, material, and highly relevant."  (Am. Compl., ¶¶ 76, 79.)

Accepting the well-pled factual allegations of the Amended Complaint as true and construing all reasonable inferences in plaintiff's favor, Vaughan has set forth the elements of a state law malicious prosecution claim.  The Court, therefore, recommends that Hyams' Motion to Dismiss Count III be denied.

### iii.    Count IV - IIED - Hyams

In order to establish a claim for the intentional or reckless infliction of severe emotional distress, a plaintiff must show: (1) that the defendant intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2) that the defendant's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it must be considered as utterly intolerable in a civilized community; (3) that the defendant's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.  *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983).  The term "serious" refers to an emotional injury which is both severe and debilitating, such that a reasonable person would be unable to cope adequately with

the mental distress engendered by the circumstances. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).

Hyams contends that Vaughan's arrest was fully justified and that Hyams' conduct was neither "outrageous and extreme beyond all bounds of decency" nor "utterly intolerable in a civilized community." (Doc. No. 19 at 19.) Hyams relies on case law finding that IIED is difficult to prove under Ohio law (Doc. No. 19 at 18) and that Ohio courts are reluctant to find police officers liable for such a claim. (Doc. No. 19 at 19.) Vaughan maintains that he has sufficiently pled facts that Hyams' failure to disclose exculpatory evidence was extreme and outrageous behavior as to satisfy the required elements. (Doc. No. 22 at 39-40.)

Vaughan's Amended Complaint states that upon his conviction for Rape, he was facing a mandatory life sentence without parole. (Am. Compl., ¶ 36.) Vaughan also asserts that he was incarcerated from March 28, 2008, until March 17, 2009. (Am. Compl., ¶¶ 36, 49-50.) Accepting the well-pled factual allegations as true, and construing all reasonable inferences in plaintiff's favor, Vaughan has sufficiently pled the elements of an IIED claim. The Court recommends that Hyams' motion to dismiss be denied as to Count IV.

### b. Corporal Jody Srsen

This Court recommends dismissal of all Counts against Corporal Jody Srsen. The Amended Complaint does not allege that Srsen's involvement continued beyond the initial investigation on the morning of September 10, 2006 and possible participation in Vaughan's arrest for Gross Sexual Imposition on September 23, 2006.

### i. Count I - § 1983 - Srsen (**individual and official capacity**)

Neither of the claims pursuant to §1983 can stand against Srsen.  There are no factual allegations that Srsen was in any way involved in the Hyams' Grand Jury testimony, nor is there any basis for a claim that Srsen failed to disclose exculpatory evidence.  In fact, there are no allegations that Srsen had any involvement with Stout whatsoever.

### ii.    Count III - Malicious Prosecution - Srsen

As explained above, Srsen is immune from Vaughan's malicious prosecution claim.  The facts do not allege that Srsen acted with the requisite malice or wanton disregard that would place her outside of the immunity protection.

### iii.    Count IV - IIED - Srsen

Srsen in immune from Vaughan's IIED claim.  The facts do not allege that Srsen acted with the requisite malice or wanton disregard that would place her outside of the protection of immunity.

The Court recommends that the Amended Complaint in its entirety be dismissed as against Srsen.

### c.    Shaker Heights and its Police Department

### i.    Count I - § 1983 - Shaker Heights

This Court incorporates the above analysis of municipality immunity as referenced in the sections devoted to the liability of Mason in his official capacity and the Commissioners.  There is no §1983 *respondeat superior* liability against a municipality.  Furthermore, Shaker Heights and its Police Department cannot be held liable for failure to train except when such failures create a policy or practice that violate a constitutional right.  Paragraph 67 of the Complaint

alleges that the "misconduct described in the Count was undertaken pursuant to the policy and practice, habit and custom, of . . . the Shaker Heights Police Department."  (Doc. No. 3 at 14.)  However, this mere recital of conclusory statements is unsupported by *any* facts in the record besides the alleged misconduct of Hyams.

Vaughan argues that Shaker Heights failed to train Hyams as to what constitutes exculpatory evidence.  However, in *Gregory v. City of Lousiville*, 444 F.3d 725, 753 (6th Cir. 2005) the Sixth Circuit specifically notes that a *systematic failure* to train police officers adequately is a custom or policy which can lead to city liability.  Such a failure to train must have a highly predictable consequence similar to the one plaintiff suffers.  *Id.*  One isolated incident cannot be the basis for a pattern or policy claim.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 430-31 (6th Cir. 2005) (holding a policy or custom cannot be established based on a single incident of potential misconduct of a city employee.)  Vaughan has failed to plead any facts that support the alleged failure to train was more than an isolated incident.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91 (1989) (That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.)

For the reasons stated above, the Court recommends that Shaker Heights' motion to dismiss be granted as to Count I.

### ii.    Count III - Malicious Prosecution - Shaker Heights

As a municipality, Shaker Heights is immune from the state law claim of malicious prosecution.  The above analysis with regards to Mason in his official capacity and the Commissioners is incorporated here.

The Court recommends that Shaker Heights' motion to dismiss be granted as to Count III.

### iii.    Count IV - IIED - Shaker Heights

As a municipality, Shaker Heights is immune from the state law claim of IIED.  The above analysis with regards to Mason in his official capacity and the Commissioners is incorporated here.

The Court recommends that Shaker Heights' motion to dismiss be granted as to Count IV.

### iv.    Count V - Indemnification - Shaker Heights

In his Amended Complaint, Vaughan alleges Ohio law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.  Thus, he argues that Shaker Heights should be liable for compensatory damages resulting from Hyams' actions within the scope of his employment.

Pursuant to O.R.C. § 2744.05, compensatory damages shall be awarded.  However, under Ohio law, punitive and exemplary damages shall not be awarded.  O.R.C. § 2744.05(A). Furthermore, a municipality is immune from punitive damages liability pursuant to §1983. *Newport v. Fact Concerts*, 453 U.S. 246, 271 (1981).

In the instant matter, as claims remain against Hyams, Count Five against Shaker Heights is a viable claim.  It is therefore recommended that Shaker Heights' motion to dismiss be denied as to Count V.

### V.  Conclusion

For the foregoing reasons, it is recommended that Defendants' Motion to Dismiss (Doc. Nos. 16, 18, 19, and 20) be granted in part and denied in part, as follows:

35

(1)  Cuyahoga County Defendants' Motion to Dismiss be granted as to all counts against Mason and the Commissioners.  (Doc. No. 13, 16.)

(2)  Hyams' Motion to Dismiss be granted in part and denied in part.  Specifically, Counts One, Three, and Four be denied; Count Two be granted.  (Doc. No. 19.)

(3)  Shaker Heights' Motion to Dismiss be granted in part and denied in part.  Specifically, Count Five be denied; Counts One, Two, Three, and Four be granted.  (Doc. No. 18.)

(4) Srsen's Motion to Dismiss be granted as to all counts.  (Doc. No. 20.)

s/ Greg White
United States Magistrate Judge

Date: August 30, 2011

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

36