**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES VAUGHAN, III, ) | |
| ) | CASE NO. 1:10 CV 609 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE LESLEY WELLS |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CITY OF SHAKER HEIGHTS, *et al.*, ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendants. ) | |

This matter is before the Court upon Summit County Children Services' ("SCCS") Motion to Quash Subpoena and Motion for a Protective Order. (Doc. No. 56.) For the following reasons, SCCS's Motion is granted in part and denied in part.

**I.    Background**

On May 17, 2013, Plaintiff James Vaughan, III filed a Second Amended Complaint against Defendants City of Shaker Heights ("Shaker Heights") and Shaker Heights Detective

Douglas K. Hyams ("Hyams").[1] (Doc. No. 49.) Therein, Plaintiff alleges the following.

On September 10, 2006, Vaughan was visiting Kelly Ross at her home on Palmerston Road in Shaker Heights. (Doc. No. 49 at ¶ 6.) Ross and her friend, Serena Miller ("Miller") were drinking heavily and holding a séance. (Doc. No. 49 at ¶ 7.) Miller's nine-year-old daughter, ("M.M."), fell asleep and Miller asked Vaughan to put her to bed. (Doc. No. 49 at ¶ 9.) Vaughan did so. (Doc. No. 49 at ¶¶ 10-11.)

Later, Miller called the Shaker Heights Police Department because M.M. allegedly stated that Vaughan had touched her inappropriately when he put her to bed. (Doc. No. 49 at ¶¶ 12-13.) Shaker Heights Police Officer Jody Srsen responded at approximately 6:50 a.m. on September 10, 2006, less than two hours after the incident had allegedly occurred. (Doc. No. 49 at ¶ 14.) Officer Srsen spoke with Miller, who indicated that M.M. had told her Vaughan had

---

[1] Plaintiff initially filed his Complaint on March 23, 2010. (Doc. No. 1.) On April 5, 2010, he filed a First Amended Complaint against Shaker Heights; Shaker Heights Police Officers Hyams and Corporal Jody Srsen ("Srsen"), in their individual and official capacities; William T. Mason ("Mason"), Cuyahoga County Prosecutor, in his individual and official capacity; the Cuyahoga County Commissioners ("the Commissioners"); and, John and Jane Does 1-10. (Doc. No. 3.) Defendants moved to dismiss all claims. (Doc. Nos. 16, 18, 19, 20.) On August 30, 2011, the undersigned issued a Report & Recommendation recommending that the Court (1) grant the motions to dismiss of Mason, the Commissioners, and Srsen as to all counts; (2) grant Defendant Hyams' motion with respect to Plaintiff's claims under 42 U.S.C. §§ 1985 and 1988 but deny it with respect to Plaintiff's § 1983 claim and state law claims for malicious prosecution and intentional infliction of emotional distress; and, (3) grant Defendant Shaker Heights' motion with respect to all claims except Plaintiff's indemnification claim. (Doc. No. 27.) This Report & Recommendation was adopted on November 28, 2011. (Doc. No. 33.) Defendants Shaker Heights and Hyams appealed. On February 12, 2013, the Sixth Circuit affirmed in part and reversed in part. Citing the recently decided Supreme Court case *Rehberg v. Paulk*, 132 S.Ct. 1497 (2013), the court found Defendant Hyams' motion to dismiss should have been granted to the extent Plaintiff's claims are premised upon his testimony during grand jury proceedings, which is protected by absolute immunity. *See Vaughn v. City of Shaker Heights*, 2013 WL 518443 at * 2 (6th Cir. Feb. 12, 2013). In all other respects, the district court's order was affirmed. *Id*. at * 2-3.

digitally penetrated her vagina and anus. (Doc. No. 49 at ¶ 15.) Srsen took statements from Miller and M.M., took several photographs, and transported M.M. to University Hospital for an examination. (Doc. No. 49 at ¶ 16.) The hospital examination showed no signs of trauma to M.M. (Doc. No. 49 at ¶ 18.)

On September 11, 2006, Defendant Hyams was assigned to investigate the allegations against Vaughan. (Doc. No. 49 at ¶ 19.) Social worker Terrie Stout was assigned by SCCS to interview and assess M.M. about the alleged acts committed by Vaughan. (Doc. No. 49 at ¶ 20.) Prior to Ms. Stout's assessment of M.M., she spoke briefly with Defendant Hyams and offered to meet with him in order to investigate the allegations together. (Doc. No. 49 at ¶ 22.) Defendant Hyams declined, stating that he did not want to "impede." (Doc. No. 49 at ¶ 23.)

Ms. Stout met with M.M. on September 18, 2006. (Doc. No. 49 at ¶ 21.) M.M. did not indicate to Stout that Vaughan had raped her. (Doc. No. 49 at ¶ 24.) Rather, M.M. described Vaughan as having touched her on the outside of her underwear in a way that made her uncomfortable and scared. (Doc. No. 49 at ¶ 26.) She did not report that Vaughan had penetrated her anally or vaginally. (Doc. No. 49 at ¶ 25.)

Ms. Stout left a voice mail for Defendant Hyams on September 18, 2006 and had a telephone conversation with him two days later. (Doc. No. 49 at ¶¶ 27, 28-33.) During these communications, Ms. Stout allegedly told Defendant Hyams that "M.M. did not provide any facts or claims that could support a charge of rape by Vaughan" but that "the allegations made by M.M. could support 'sexual fondling.'"[2] (Doc. No. 49 at ¶¶ 39-41.) Defendant Hyams told

---

[2] The Second Amended Complaint alleges that Defendant Hyams prevented Stout from interviewing Vaughan directly and, therefore, she did not have the opportunity to speak with him "about what occurred, and the potential explanation that the contact was unintentional." (Doc.

3

Ms. Stout that "he did not want anyone from her agency involved with interviewing Vaughan because he thought they would 'impede.'" (Doc. No. 49 at ¶ 32.) On September 20, 2006, Ms. Stout closed the file on M.M., noting that there was no trauma evident. (Doc. No. 49 at ¶ 36.) She mailed her dispositional letter to Defendant Hyams, but did not send it to the Cuyahoga County Prosecutor's Office or any other agency. (Doc. No. 49 at ¶¶ 42-43.) Plaintiff alleges that Hyams did not inform anyone at the Shaker Heights Police Department or the Cuyahoga County Prosecutor's Office that "the only person who interviewed the alleged victim, Ms. Stout, had learned from the victim herself that Vaughan had not penetrated her either vaginally or anally." (Doc. No. 49 at ¶ 50.)

Vaughan was arrested by the Shaker Heights Police Officers on September 23, 2006 and charged with gross sexual imposition. (Doc. No. 49 at ¶ 44.) Following a bind-over from Shaker Heights Municipal Court, on October 11, 2006, a Cuyahoga County Grand Jury indicted Vaughan for rape under Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(B). (Doc. No. 49 at ¶ 45.) Defendant Hyams was the only witness who testified at the Grand Jury. (Doc. No. 49 at ¶ 47.) He did not disclose that M.M. had told Ms. Stout during her assessment that Vaughan had only touched her outside her underwear. (Doc. No. 49 at ¶ 54.) Plaintiff further alleges Hyams "manufactured false evidence that Vaughan had penetrated M.M." and then "disseminated the false and manufactured evidence in official investigatory documents that he completed for Shaker Heights Police Department and for Cuyahoga County." (Doc. No. 49 at ¶ 55.)

On March 24, 2008, Vaughan's bench trial began. (Doc. No. 49 at ¶ 57.) Plaintiff alleges that "prior to and during Vaughan's [criminal] trial . . ., Hyams knowingly and

---

No. 49 at ¶ 41.)

intentionally withheld and suppressed exculpatory evidence and information from M.M. that directly contradicted that Vaughan had raped M.M." (Doc. No. 49 at ¶ 58.) On March 28, 2008, Vaughan was convicted of rape in violation of O.R.C. § 2907.02(A)(1)(B) with sexual predator specifications and was given a mandatory sentence of life without parole. (Doc. No. 49 at ¶ 57.) He was immediately taken into custody and incarcerated. *Id.*

Vaughan later obtained a new legal team. (Doc. No. 49 at ¶ 61.) The new team hired an investigator, who interviewed Stout on May 10, 2008. (Doc. No. 49 at ¶ 62.) During this interview, Vaughan's investigator discovered "for the first time, the previously undisclosed relevant, material, exculpatory evidence that was provided to Defendant Hyams by Ms. Stout." (Doc. No. 49 at ¶ 63.) Vaughan's new counsel moved for a new trial based, in large part, on the information obtained from Ms. Stout during this interview. (Doc. No. 49 at ¶ 64.) On March 17, 2009, the state trial court granted Vaughan a new trial based on the previously unheard testimony of Ms. Stout. (Doc. No. 49 at ¶ 65.) At the conclusion of the second trial, the jury spent an hour deliberating before finding Vaughan not guilty of rape. (Doc. No. 49 at ¶ 67.) He was thereafter released from custody. (Doc. No. 49 at ¶ 67.)

The Second Amended Complaint states four claims for relief. Claim One states a claim under 42 U.S.C. § 1983 premised on Defendant Hyams' alleged failure to disclose exculpatory evidence, including "Hyams' knowledge that M.M.'s description of the alleged incident, related to Ms. Stout during her assessment, did [not] indicate that Vaughan had committed any act that constituted rape." (Doc. No. 49 at ¶¶ 76-86.) Count Two alleges a state law claim for malicious prosecution. (Doc. No. 49 at ¶¶ 87-92.) Count Three alleges a state law claim for intentional infliction of emotional distress. (Doc. No. 49 at ¶¶ 93-101.) Count Four alleges an

indemnification claim against the Defendant City of Shaker Heights.  (Doc. No. 49 at ¶¶ 102-104.)

On June 11, 2013, Defendants filed a Notice of Service of Subpoena pursuant to Fed. R. Civ. P. 45(b) (Doc. No. 54), to which they attached a copy of a Subpoena directing SCCS to produce "the entire case . . . file relating to an alleged incident on September 6, 2006 in Shaker Heights, Ohio involving [the minor child M.M.] which was handled by Summit County Children Services worker Terrie Stout, including but not limited to Stout's investigatory file, communications and notes." (Doc. No. 54-1.)

SCCS thereafter filed a Motion to Quash Subpoena and Motion for a Protective Order (Doc. No. 56), arguing the requested documents are confidential pursuant to Ohio Revised Code ("O.R.C") §§ 2151.421(H), 5101.13 *et seq*., and 5153.17.  Defendants opposed SCCS's motion, arguing there is "good cause" for disclosure of the records because the file may include information necessary for their defense. (Doc. No. 57.)

The Court conducted a conference in Chambers on SCCS's Motion on July 16, 2013, at which counsel for SCCS, Defendants, and Plaintiff were present.  (Doc. No. 58).  At this hearing, the Court ordered SCCS to deliver both redacted and unredacted copies of the requested records to the Court for an *in camera* inspection.  (Doc. No. 58).  On July 19, 2013, SCCS provided records to the Court for *in camera* review.  This submission included records relating not only to the September 2006 incident referenced in the Subpoena, but also documentation regarding other incidents involving contact between SCCS and the family of M.M.  After conducting an *in camera* review, the Court determined that the redacted records should be limited only to those documents requested in the Subpoena; i.e. documents relating to or explicitly referencing the

September 2006 incident. On July 26, 2013, SCCS provided a revised set of redacted records that was so limited.

Having conducted an *in camera* review of the redacted SCCS records, and for the reasons set forth below, the Court grants in part and denies in part SCCS's Motion to Quash.

**II.    Analysis**

Ohio law provides that written records of investigations relating to children, as performed by public children services agencies, are confidential. Specifically, O.R.C. § 2151.421(H) provides as follows:

> (H)(1) Except as provided in divisions (H)(4) and (N) of this section,[3] a report made under this section is confidential. The information provided in a report made pursuant to this section and the name of the person who made the report shall not be released for use, and shall not be used, as evidence in any civil action or proceeding brought against the person who made the report. Nothing in this division shall preclude the use of reports of other incidents of known or suspected abuse or neglect in a civil action or proceeding brought pursuant to division (M) of this section against a person who is alleged to have violated division (A)(1) of this section, provided that any information in a report that would identify the child who is the subject of the report or the maker of the report, if the maker of the report is not the defendant or an agent or employee of the defendant, has been redacted.[4] In a criminal proceeding, the report is admissible in evidence in accordance with the Rules of Evidence and is subject to

---

[3] Section 2151.421(H)(4) relates to reports regarding children who died after the report was made but before the child attained 18 years of age. Section 2151.421(N) relates to reports regarding alleged child abuse or neglect that occurred in or involved an out-of-home care entity. Neither of these sections are relevant to the instant action.

[4] Section 2151.421(M) provides that "a person who brings a civil action or proceeding pursuant to this division against a person [for failure to report suspected child abuse or neglect] may use in the action or proceeding reports of other incidents of known or suspected abuse or neglect, provided that any information in a report that would identify the child who is the subject of the report or the maker of the report, if the maker is not the defendant or an agent or employee of the defendant, has been redacted." This section is not relevant to the instant action.

7

discovery in accordance with the Rules of Criminal Procedure.

O.R.C. 2151.421(H)(1). *See also* O.R.C. § 5153.17 (providing that public children services agency records are confidential).

However, Ohio courts have found that the confidentiality of such records is "not absolute." *See e.g. Johnson v. Johnson*, 134 Ohio App.3d 579, 582 (Ohio App. 3rd Dist. 1999); *Conrad v. Richland Cty Children Serv*., 2012 WL 3637280 at * 2 (Ohio App. 5th Dist. Aug. 22, 2012); *Swartzentruber v. Orrville Grace Brethren Church*, 163 Ohio App.3d 96, 621-22 (Ohio App. 9th Dist. 2005); *In re J.C.*, 2006 WL 1571056 at *3 (Ohio App. 8th Dist. June 8, 2006). Rather, "a court may conduct an *in camera* inspection of child abuse records and reports and also has the *inherent power* to order disclosure of such records and reports where (1) the records and reports are relevant to the pending action; (2) good cause for such a request has been established by the person seeking disclosure; and (3) where admission of the records and reports outweighs the confidentiality consideration set forth in R.C. 5153.17 and R.C. 2151.421(H)(1)." *Johnson*, 134 Ohio App.3d at 585 (emphasis in original). *See also Swartzentruber*, 163 Ohio App.3d at 622; *Conrad*, 2012 WL 3637280 at * 2; *Hupp v. Switzerland of Ohio Local School Dist*., 2008 WL 2323783 at * 3 (S.D. Ohio June 3, 2008). "Good cause" has been defined to mean "'when it is in the best interests of the child or when the due process rights of other subjects of the record are implicated.'" *Johnson*, 134 Ohio App.3d at 583 (quoting 1991 Ohio Atty. Gen. Ops. No. 91-003). "Similarly, the possibility of disclosure outweighing confidentiality considerations was directed at providing for the protection of the child or exonerating someone incorrectly criminally accused." *Swartzentruber*, 163 Ohio App.3d at 101.

Here, the Court is faced with the somewhat unusual circumstance of a party seeking

8

disclosure of confidential child services records from a non-party in the context of a civil action for damages. In this situation, the typical due process considerations supporting disclosure of such records in criminal and domestic relations matters are not necessarily present. However, under similar circumstances, courts have nonetheless recognized the existence of a "good cause" exception to the confidentiality of child services records and allowed the *in camera* inspection and disclosure of such records in the context of a civil damages action. *See e.g. Conrad*, 2012 WL 3637280 at *3 -4 (finding trial court did not err in recognizing "good cause" exception to confidentiality requirements set forth in O.R.C. § 2151.421(H) in context of civil damages action); *Hupp*, 2008 WL 2323783 at * 3-4 (in ADA action against defendant school district, court recognizes "good cause" exception to confidentiality of child services records).

In the instant case, the Court has conducted a careful *in camera* review of the requested child services records. Based on this review, and subject to the limitations and restrictions set forth *infra* in Section III of this Opinion, the Court finds Defendants have established good cause to warrant disclosure of redacted copies of the documents requested in the Subpoena; i.e. documents relating to or explicitly referencing the September 2006 incident. These documents consist of internal SCCS activity logs, investigations, communications, dispositions, and assessments documenting SCCS's investigation of the September 2006 incident involving sexual abuse of M.M. Because these internal records are limited to only the September 2006 incident and any subsequent reference to this incident, the Court finds these documents are relevant to the instant case.

Moreover, the Court finds Defendants have shown good cause for their disclosure. The basis of Plaintiff's suit is that Defendant Hyams allegedly obtained exculpatory information

during his conversations with Ms. Stout regarding the September 2006 incident and failed to disclose this information.  Defendants have indicated the SCCS records at issue are necessary to defend against Plaintiff's claims.  Under these circumstances, the Court finds disclosure of the redacted internal SCCS documents relating to the September 2006 incident is justified to protect Defendants' ability to defend themselves against the claims set forth in the Second Amended Complaint, subject to the terms and conditions set forth in Section III of this Opinion.

     For similar reasons, the Court finds disclosure of the internal SCCS documents at issue outweighs the confidentiality concerns set forth in Section 2151.421(H).  As set forth above, the records at issue relate only to the September 2006 incident.  Any communications between Ms. Stout and Defendant Hyams that may be documented in these records are central to Plaintiff's claims.  Moreover, while the Court appreciates the policy considerations underlying Ohio's confidentiality provisions, here SCCS has redacted sensitive information contained in the records, including (1) the identity of the person who reported the incident; (2) any reference to previous history between the M.M. family and SCCS; (3) any subsequent history/referrals involving M.M. and SCCS except to the extent that there are references to the September 10, 2006 sexual abuse; (4) names and addresses of foster parent(s); and, (5) social security numbers.  The Court finds these redactions (along with the additional restrictions set forth in the Section III of this Opinion) sufficiently address the confidentiality concerns set forth in Section 2151.421(H).  Accordingly, the Court orders disclosure of these redacted, internal SCCS documents, subject to the conditions set forth in Section III of this Opinion.

     The Court will not, however, order disclosure of the remaining documents initially provided for *in camera* review; i.e. SCCS records that relate to contacts between SCCS and the

10

M.M. family regarding incidents other than the September 2006 incident, and which do not explicitly refer to that incident. The Court finds these documents are neither requested by the Subpoena or relevant to the claims set forth in the Second Amended Complaint. Accordingly, the Court finds good cause does not exist to justify the disclosure of any such documents.

### III.    Conditions of Disclosure

Having conducted its *in camera* review, and for the reasons set forth above, the Court finds that the redacted internal SCCS records relating to the September 2006 incident are relevant to the claims set forth in the Second Amended Complaint; that good cause exists for the request of the records; and, that the use of the redacted records in the instant case outweighs the confidentiality considerations set forth in O.R.C. §§ 5101.13, 5153.17 and 2151.421(H). Disclosure is subject, however, to the following conditions.

Counsel is admonished that these records must be treated as confidential at all times. This Order does not authenticate or render the SCCS records automatically admissible at trial. To the extent such records are utilized at trial, they shall not be exposed in open court without good cause and the explicit permission of the Court. To the extent it is necessary for a party to discuss the contents of any confidential document in a written brief, counsel shall prepare two versions of the brief, a public and a confidential version. In the public version, references to contents of confidential documents shall be redacted. The confidential version shall be a full and complete version of the brief and shall be filed with the Clerk under seal. Further, all depositions to which such documents attach or are referenced shall remain confidential and, if filed, shall be filed under seal.

These documents may be used for the above-captioned proceeding only and the parties are

11

prohibited from re-releasing or disseminating these records beyond the purposes of the instant case.  Re-releasing or dissemination of these records in violation of this Order may result in sanctions.  Within thirty (30) days of entry of final judgment not subject to further appeal, all confidential documents under this Order, including copies, shall be returned to SCCS unless: (1) the document has been offered into evidence; (2) the parties agree to destruction in lieu of return; or (3) as to documents bearing the notations, summation, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.  Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product, including an index which refers or relates to confidential documents, so long as that work product does not duplicate verbatim substantial portions of the text or images of confidential documents.  This work product shall continue to be subject to the terms and conditions of this Order.

**IV.**     **Conclusion**

For the reasons set forth above, SCCS's Motion to Quash Subpoena and Motion for a Protective Order (Doc. No. 56) is granted in part and denied in part.  SCCS's Motion is denied with respect to the redacted internal SCCS documents provided to this Court for *in camera* review that relate specifically to the September 2006 incident involving M.M, and any subsequent SCCS documents that contain explicit references to that incident.  Disclosure of these documents is subject to the Conditions of Disclosure set forth above in Section III of this Opinion.  SCCS's Motion is granted with respect to the remaining documents provided by SCCS to this Court for *in*

*camera* review.

IT IS SO ORDERED.

                                                  /s/ Greg White
                                                  U.S. Magistrate Judge

Date: July 30, 2013