**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES VAUGHAN, III, ) | |
| ) | CASE NO.  1:10 CV 609 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE LESLEY WELLS |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CITY OF SHAKER HEIGHTS, *et al.*, ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendants. ) | |

This matter is before the Court upon the Cuyahoga County Prosecutor's Office's ("CCPO") Motion to Quash Plaintiff's Subpoena and Motion for a Protective Order.  (Doc. No. 61.)  For the following reasons, CCPO's Motion is granted in part and denied in part.

**I.     Background**

On May 17, 2013, Plaintiff James Vaughan, III filed a Second Amended Complaint against Defendants City of Shaker Heights ("Shaker Heights") and Shaker Heights Detective

Douglas K. Hyams ("Hyams").[1] (Doc. No. 49.) Therein, Plaintiff alleges the following.

On September 10, 2006, Vaughan was visiting Kelly Ross at her home in Shaker Heights. (Doc. No. 49 at ¶ 6.) Ross and her friend, Serena Miller ("Miller") were drinking heavily and holding a séance. (Doc. No. 49 at ¶ 7.) Miller's nine-year-old daughter, ("M.M."), fell asleep and Miller asked Vaughan to put her to bed. (Doc. No. 49 at ¶ 9.) Vaughan did so. (Doc. No. 49 at ¶¶ 10-11.)

Later, Miller called the Shaker Heights Police Department because M.M. allegedly stated that Vaughan had touched her inappropriately when he put her to bed. (Doc. No. 49 at ¶¶ 12-13.) Shaker Heights Police Officer Jody Srsen responded at approximately 6:50 a.m. on September 10, 2006, less than two hours after the incident had allegedly occurred. (Doc. No. 49 at ¶ 14.) Officer Srsen spoke with Miller, who indicated that M.M. had told her Vaughan had

---

[1] Plaintiff initially filed his Complaint on March 23, 2010. (Doc. No. 1.) On April 5, 2010, he filed a First Amended Complaint against Shaker Heights; Shaker Heights Police Officers Hyams and Corporal Jody Srsen ("Srsen"), in their individual and official capacities; William T. Mason ("Mason"), Cuyahoga County Prosecutor, in his individual and official capacity; the Cuyahoga County Commissioners ("the Commissioners"); and, John and Jane Does 1-10. (Doc. No. 3.) Defendants moved to dismiss all claims. (Doc. Nos. 16, 18, 19, 20.) On August 30, 2011, the undersigned issued a Report & Recommendation recommending that the Court (1) grant the motions to dismiss of Mason, the Commissioners, and Srsen as to all counts; (2) grant Defendant Hyams' motion with respect to Plaintiff's claims under 42 U.S.C. §§ 1985 and 1988 but deny it with respect to Plaintiff's § 1983 claim and state law claims for malicious prosecution and intentional infliction of emotional distress; and, (3) grant Defendant Shaker Heights' motion with respect to all claims except Plaintiff's indemnification claim. (Doc. No. 27.) This Report & Recommendation was adopted on November 28, 2011. (Doc. No. 33.) Defendants Shaker Heights and Hyams appealed. On February 12, 2013, the Sixth Circuit affirmed in part and reversed in part. Citing the recently decided Supreme Court case *Rehberg v. Paulk*, 132 S.Ct. 1497 (2013), the court found Defendant Hyams' motion to dismiss should have been granted to the extent Plaintiff's claims are premised upon his testimony during grand jury proceedings, which is protected by absolute immunity. *See Vaughn v. City of Shaker Heights*, 2013 WL 518443 at * 2 (6th Cir. Feb. 12, 2013). In all other respects, the district court's order was affirmed. *Id*. at * 2-3.

digitally penetrated her vagina and anus. (Doc. No. 49 at ¶ 15.) Srsen took statements from Miller and M.M., took several photographs, and transported M.M. to University Hospital for an examination. (Doc. No. 49 at ¶ 16.) The hospital examination showed no signs of trauma to M.M. (Doc. No. 49 at ¶ 18.)

On September 11, 2006, Defendant Hyams was assigned to investigate the allegations against Vaughan. (Doc. No. 49 at ¶ 19.) Social worker Terrie Stout was assigned by Summit County Children's Services ("SCCS") to interview and assess M.M. about the alleged acts committed by Vaughan. (Doc. No. 49 at ¶ 20.) Prior to Ms. Stout's assessment of M.M., she spoke briefly with Defendant Hyams and offered to meet with him in order to investigate the allegations together. (Doc. No. 49 at ¶ 22.) Defendant Hyams declined, stating that he did not want to "impede." (Doc. No. 49 at ¶ 23.)

Ms. Stout met with M.M. on September 18, 2006. (Doc. No. 49 at ¶ 21.) Plaintiff alleges M.M. did not indicate to Stout that Vaughan had raped her. (Doc. No. 49 at ¶ 24.) Rather, M.M. allegedly described Vaughan as having touched her on the outside of her underwear in a way that made her uncomfortable and scared. (Doc. No. 49 at ¶ 26.) Plaintiff claims M.M. did not report that Vaughan had penetrated her anally or vaginally. (Doc. No. 49 at ¶ 25.)

Ms. Stout left a voice mail for Defendant Hyams on September 18, 2006 and had a telephone conversation with him two days later. (Doc. No. 49 at ¶¶ 27, 28-33.) During these communications, Ms. Stout allegedly told Defendant Hyams that "M.M. did not provide any facts or claims that could support a charge of rape by Vaughan" but that "the allegations made

3

by M.M. could support 'sexual fondling.'"[2] (Doc. No. 49 at ¶¶ 39-41.) Defendant Hyams told Ms. Stout that "he did not want anyone from her agency involved with interviewing Vaughan because he thought they would 'impede.'" (Doc. No. 49 at ¶ 32.) On September 20, 2006, Ms. Stout closed the file on M.M., noting that there was no trauma evident. (Doc. No. 49 at ¶ 36.) She mailed her dispositional letter to Defendant Hyams, but did not send it to the Cuyahoga County Prosecutor's Office or any other agency. (Doc. No. 49 at ¶¶ 42-43.) Plaintiff alleges that Hyams did not inform anyone at the Shaker Heights Police Department or the Cuyahoga County Prosecutor's Office that "the only person who interviewed the alleged victim, Ms. Stout, had learned from the victim herself that Vaughan had not penetrated her either vaginally or anally." (Doc. No. 49 at ¶ 50.)

Vaughan was arrested by the Shaker Heights Police Officers on September 23, 2006 and charged with gross sexual imposition. (Doc. No. 49 at ¶ 44.) Following a bind-over from Shaker Heights Municipal Court, on October 11, 2006, a Cuyahoga County Grand Jury indicted Vaughan for rape under Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(B). (Doc. No. 49 at ¶ 45.) Defendant Hyams was the only witness who testified at the Grand Jury. (Doc. No. 49 at ¶ 47.) He did not disclose that M.M. had told Ms. Stout during her assessment that Vaughan had only touched her outside her underwear. (Doc. No. 49 at ¶ 54.) Plaintiff further alleges Hyams "manufactured false evidence that Vaughan had penetrated M.M." and then "disseminated the false and manufactured evidence in official investigatory documents that he completed for

---

[2] The Second Amended Complaint alleges that Defendant Hyams prevented Stout from interviewing Vaughan directly and, therefore, she did not have the opportunity to speak with him "about what occurred, and the potential explanation that the contact was unintentional." (Doc. No. 49 at ¶ 41.)

4

Shaker Heights Police Department and for Cuyahoga County." (Doc. No. 49 at ¶ 55.)

On March 24, 2008, Vaughan's bench trial began. (Doc. No. 49 at ¶ 57.) Plaintiff alleges that "prior to and during Vaughan's [criminal] trial . . ., Hyams knowingly and intentionally withheld and suppressed exculpatory evidence and information from M.M. that directly contradicted that Vaughan had raped M.M." (Doc. No. 49 at ¶ 58.) On March 28, 2008, Vaughan was convicted of rape in violation of O.R.C. § 2907.02(A)(1)(B) with sexual predator specifications and was given a mandatory sentence of life without parole. (Doc. No. 49 at ¶ 57.) He was immediately taken into custody and incarcerated. *Id.*

Vaughan later obtained a new legal team. (Doc. No. 49 at ¶ 61.) The new team hired an investigator, who interviewed Stout on May 10, 2008. (Doc. No. 49 at ¶ 62.) During this interview, Vaughan's investigator discovered "for the first time, the previously undisclosed relevant, material, exculpatory evidence that was provided to Defendant Hyams by Ms. Stout." (Doc. No. 49 at ¶ 63.) Vaughan's new counsel moved for a new trial based, in large part, on the information obtained from Ms. Stout during this interview. (Doc. No. 49 at ¶ 64.) On March 17, 2009, the state trial court granted Vaughan a new trial based on the previously unheard testimony of Ms. Stout. (Doc. No. 49 at ¶ 65.) At the conclusion of the second trial, the jury spent an hour deliberating before finding Vaughan not guilty of rape. (Doc. No. 49 at ¶ 67.) He was thereafter released from custody. (Doc. No. 49 at ¶ 67.)

The Second Amended Complaint states four claims for relief. Claim One states a claim under 42 U.S.C. § 1983 premised on Defendant Hyams' alleged failure to disclose exculpatory evidence, including "Hyams' knowledge that M.M.'s description of the alleged incident, related to Ms. Stout during her assessment, did [not] indicate that Vaughan had committed any act that

5

constituted rape." (Doc. No. 49 at ¶¶ 76-86.) Count Two alleges a state law claim for malicious prosecution. (Doc. No. 49 at ¶¶ 87-92.) Count Three alleges a state law claim for intentional infliction of emotional distress. (Doc. No. 49 at ¶¶ 93-101.) Count Four alleges an indemnification claim against the Defendant City of Shaker Heights. (Doc. No. 49 at ¶¶ 102-104.)

On July 24, 2013, Plaintiff issued a Subpoena pursuant to Fed. R. Civ. P. 45(b) (Doc. No. 61-1) to Prosecutor Timothy McGinty of the CCPO. Therein, Plaintiff directs the CCPO to produce "the entire prosecutor's file including all notes in the following case: State v. Vaughan III, Case Number 06-CR-487022, Judge Joseph Russo." (Doc. No. 61-1.) The CCPO thereafter filed a Motion to Quash Plaintiff's Subpoena and for a Protective Order (Doc. No. 61). It is this Motion that is currently before the Court.

**II.     Analysis**

The scope of a subpoena issued under Fed. R. Civ. P. 45 is "subject to the general relevancy standard applicable to discovery under Fed.R.Civ.P. 26(b)(1)."[3] *Laethem Equip. Co. v. Deere and Co.*, 2007 WL 2873981. at *4 (E.D .Mich.2007) (internal quotation omitted). "That general relevancy standard is very broad." *Cleveland Clinic Health System-East Region v.*

---

[3] Pursuant to Rule 26(b)(1), parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action. Fed R. Civ. P. 26(b)(1). This Rule explains that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Rule 26 is to be liberally construed to permit broad discovery. *See Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 492 (6th Cir. 1998); *U.S. v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir.1976). That being said, Rule 26(b)(2)(C) provides that the Court must limit the extent of discovery if the discovery sought "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit ..." Fed.R.Civ.P. 26(b)(2)(C).

*Innovative Placements, Inc.*, 2012 WL 187979 at *2 (N.D. Ohio Jan. 23, 2012) (quoting *Lewis v. ACB Bus. Serv. Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Rule 45(c) does provide, however, circumstances under which a court must or may quash or modify a subpoena. That Rule provides, in pertinent part, that "the issuing court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply ... (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A). Rule 45(c)(3)(B) also further establishes that the court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed.R.Civ.P. 45(c)(3).

The party issuing a subpoena must take reasonable steps to avoid imposing an undue burden on a person subject to a subpoena, but "the movant bears the burden of establishing that the issued subpoenas violate Rule 45 of the Federal Rules of Civil Procedure." *Cleveland Clinic Health System-East Region*, 2012 WL 187979 at * 2 (quoting *Recycled Paper Greetings, Inc. v. Davis*, 2008 WL 440458 at * 3 (N.D. Ohio Feb. 13, 2008). In evaluating a motion to quash a subpoena, the district court may consider "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Id*. (quoting *Bogosian v. Woloohojian Realty Corp*., 323 F.3d 55, 66 (1st Cir. 2003)). "If the documents sought by the subpoena are 'relevant and are sought for good cause,' then the subpoena should be enforced 'unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.'" *Chao v. Local 951, United Food and Commercial Workers International Union*, 2006 WL 2380609, at *2 (N.D.Ohio 2006) (citing

7

*Bariteau v. Krane*, 206 F.R.D. 129, 130 (WD. Ky. 2001)).

Here, the CCPO argues Plaintiff's subpoena is overly broad and unduly burdensome. It maintains the Court should not require it, as a non-party, to produce the requested documents when they are readily available to Plaintiff from either his criminal defense lawyers or Defendant Shaker Heights.[4] Moreover, CCPO argues the documents sought are privileged communications under Ohio Rev. Code 2317.02, and/or subject to protection under the attorney work product doctrine. It maintains Plaintiff has failed to demonstrate a "substantial need" for such documents and, therefore, the subpoena should be quashed in its entirety. (Doc. No. 61.)

Plaintiff opposes the CCPO's motion, arguing his "§1983 claim requires demonstrating

---

[4] CCPO also argues the subpoena should be quashed because it was not personally served on Mr. McGinty but, rather, was served on the receptionist for the Prosecutor's Office. (Doc. No. 61 at 4.) The Court rejects this argument. Rule 45(b)(1) provides that "[s]erving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). The Sixth Circuit has not yet addressed the issue of whether Rule 45 requires personal service of a subpoena. District courts have reached differing conclusions, with some requiring personal service and others concluding service is effective so long as it reasonably insures actual receipt of the subpoena. *Contrast McClendon v. TelOhio Credit Union, Inc.,* 2006 WL 2380601 at * 2 (S.D. Ohio Aug. 14, 2006) (noting "in passing" that Rule 45(b)(1) requires personal service of subpoenas) and *Taylor v. Countrywide Home Loans*, 2009 WL 1913417 at * 5 (E.D. Mich. June 30, 2009) (same) with *Powell v. Time Warner Cable, Inc*. 2010 WL 5464895 (S.D. Ohio Dec. 30, 2010) ("The Court agrees with and adopts the analyses of those courts finding that service of a subpoena is effective so long as it reasonably insures actual receipt"); *Franklin v. State Farm Fire & Cas. Co.,* 2009 WL 3152993 at * 1-2 (E.D. Mich. 2009)(same); *Garvins v. Hofbauer*, 2012 WL 1578919 at * 2 (W.D. Mich. May 4, 2012) (same). The Court need not expressly decide this issue, however, because it is clear the CCPO actually received Plaintiff's subpoena in a timely fashion, had an opportunity to challenge it, and was not otherwise prejudiced by the method of service. Under such circumstances, courts have overlooked any alleged technical violations of Rule 45(b)(1). *See Gist v. Pilot Travel Centers*, LLC, 2011 WL 4055788 at * 2, n. 1 (M.D. Tenn. Sept. 12, 2011) ("in circumstances where the service of a subpoena was not personal . . . but the party did actually receive the subpoena in a timely fashion and was not prejudiced by the method of service, it is appropriate for the court to overlook any technical deficiencies and explore the merits of the discovery request"); *Garvins*, 2012 WL 1578919 at * 2 (same).

8

that Defendant Hyams failed to disclose exculpatory evidence to anyone, including the Prosecutor" and that "[o]btaining and then reviewing the Prosecutor's file may be the only way to achieve this." (Doc. No. 64 at 7.) Plaintiff maintains the CCPO has failed to demonstrate undue burden and, further, that any confidentiality/work product concerns are outweighed by his substantial need for the documents at issue.

The Court conducted a conference in Chambers on the CCPO's Motion on August 22, 2013, at which counsel for the CCPO, Plaintiff, and Defendants were present. (Doc. No. 65.) At this conference, the Court ordered CCPO to submit to the Court for *in camera* inspection "any documents from its file in *State v. Vaughan*, Case No. 06-CR-487022 that reflect or reference communications, occurring prior to the Grand Jury proceedings or the first trial, between (1) Defendant Hyams and the CCPO; (2) the CCPO and SCCS; and/or (3) Defendant Hyams and SCCS."[5] (Doc. No. 65). Later the same day, the CCPO provided 203 bates-stamped pages of documents to the Court for *in camera* review.[6] The Court has completed its *in camera* review and finds as follows.

The CCPO's Motion to Quash and for a Protective Order is granted in part and denied in part. With respect to CCPO's argument that the subpoena is overly broad, the Court finds this concern has been adequately addressed. While the subpoena as written sought the entire Prosecutor's file relating to Plaintiff's underlying criminal trials, the Court determined during the

---

[5] The Court noted, however, that this Order did not include any SCCS documents or records. (Doc. No. 65.)

[6] In so doing, the CCPO indicated that, in order to forestall any argument that it had withheld documents, it was erring on the side of caution and producing not only potentially responsive documents but the "raw data" from where it identified such responsive documents.

August 22, 2013 conference that the CCPO need only produce for *in camera* inspection those documents falling within the limited categories set forth above.  As so modified, the Court finds the subpoena at issue is not overly broad.

With regard to the CCPO's argument that the subpoena is unduly burdensome, the Court rejects this argument.  In determining whether a subpoena imposes an undue burden, a court considers "such factors as relevance, the need of the [requesting] party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *American Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999).  *See also Kilroy v. Husted*, 2011 WL 3706123 at * 2 (S.D. Ohio Aug. 24, 2011); *Battle v. Chicago Cycle, Inc*., 2012 WL 5500507 at * 5 (N.D. Ohio Nov. 13, 2012).  "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure."  *American Elec. Power*, 191 F.R.D. at 136.  The burden is on the party requesting information to "establish a need for the breadth of the information sought, in response to [a non-party's] prima facie showing that the discovery [would be] burdensome."  *Katz v. Batavia Marine & Sporting Supplies, Inc*., 984 F.2d 422, 425 (6th Cir.1993).

Weighing the factors set forth above, the Court finds the subpoena herein (as narrowed during the August 22, 2013 conference) does not impose an undue burden on the CCPO.  Documents referencing communications between Defendant Hyams and either the CCPO or SCCS are clearly relevant to proving Plaintiff's claim that Hyams failed to disclose exculpatory information to the CCPO regarding the SCCS's investigation.  Moreover, while Plaintiff may

have (or have access to) some of these documents from other sources, the Court agrees that Plaintiff's need to confirm the presence or absence of such communications in the CCPO file is significant and that the most effective way to do that is to obtain discovery of the CCPO file itself (subject to the limitations established by the Court during the August 22, 2013 conference). Further, the CCPO has not meaningfully identified any particular administrative burden imposed by having to produce this information, particularly in light of the Court's decision to narrow the scope of the subpoena. Indeed, counsel for CCPO acknowledged that the file at issue had been scanned and was readily available for review and submission to the Court for *in camera* inspection. Accordingly, the Court finds the subpoena, as modified, is not unduly burdensome.

Finally, the CCPO argues the subpoena should be quashed because it requests documents that are privileged and/or protected by the attorney work product doctrine. It argues that some of the documents submitted for *in camera* inspection, although potentially falling within the narrowed categories established by the Court, should nevertheless not be produced to Plaintiff because they contain privileged communications, fact work product, and/or opinion work product.

As set forth above, Rule 45(c)(3) provides that a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3). Attorney-client privilege and attorney work product are distinct legal concepts. As the Sixth Circuit explained in *In re Columbia/HCA Healthcare Corp. v. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002):

> Claims of attorney-client privilege are "narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit." [*United States v.] Collis*, 128 F.3d [313], 320 [6th Cir. 1997] (citing *In re Grand Jury Proceedings*, 78 F.3d [251], 254 [6th Cir. 1996]). The privilege

11

> "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1975)).
>
> The work product doctrine "is distinct from and broader than the attorney-client privilege." *In re Antitrust Grand Jury*, 805 F.2d at 163 (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975)). The doctrine is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). So-called "fact" work product, the "written or oral information transmitted to the attorney and recorded as conveyed by the client," *In re Antitrust Grand Jury*, 805 F.2d at 163, may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. *See Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339–40 (6th Cir. 1988). However, absent waiver, a party may not obtain the "opinion" work product of his adversary; i.e., "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." *In re Antitrust Grand Jury*, 805 F.2d at 163–64 (citations omitted).

*Id.* at 294.

Here, the Court has carefully and thoroughly reviewed the documents submitted for *in camera* inspection. To the extent any of these documents represent privileged communications and/or "opinion" work product, they will not be released. To the extent any of these documents contain "fact" work product, as previously limited, the Court finds Plaintiff has demonstrated a "substantial need and inability to otherwise obtain [them] without material hardship." *In re Columbia/HCA Healthcare Corp. v. Billing Practices Litigation*, 293 F.3d at 294. The nature and extent of Defendant Hyams' communications with the CCPO and SCCS are central to Plaintiff's § 1983 claims. While Plaintiff may have access to documents reflecting such communications from other sources, the Court agrees that the most direct method of determining the scope of any such communications is through discovery of the CCPO file itself (subject to the limitations

12

established by the Court during the August 22, 2013 conference). Thus, of the 203 pages of documents provided for *in camera* review, the Court has determined that twenty-seven (27) pages (Bates Stamps 00001-00007, 000012-000015, 000018-000028, 000030, 000041, 000073-000075) are relevant and discoverable for the reasons set forth above. Copies of these documents will be released to the parties contemporaneously with the entry of this Opinion & Order, subject to the Conditions of Disclosure set forth below.

Accordingly, and for all the reasons set forth above, CCPO's Motion to Quash and for Protective Order is granted in part and denied in part.

### III. Conditions of Disclosure

For the reasons set forth above, the Court finds that certain documents provided by CCPO to the Court for *in camera* review are relevant to the claims set forth in the Second Amended Complaint and that good cause exists for the request of such records. Disclosure is subject, however, to the following conditions.

Counsel is admonished that these records must be treated as confidential at all times. This Order does not authenticate or render the CCPO records automatically admissible at trial. To the extent such records are utilized at trial, they shall not be exposed in open court without good cause and the explicit permission of the Court. To the extent it is necessary for a party to discuss the contents of any confidential document in a written brief, counsel shall prepare two versions of the brief, a public and a confidential version. In the public version, references to the contents of confidential documents shall be redacted. The confidential version shall be a full and complete version of the brief and shall be filed with the Clerk under seal. Further, all depositions to which such documents attach or are referenced shall remain confidential and, if filed, shall be filed

under seal.

These documents may be used for the above-captioned proceeding only and the parties are prohibited from re-releasing or disseminating these records beyond the purposes of the instant case. Re-releasing or dissemination of these records in violation of this Order may result in sanctions. Within thirty (30) days of entry of final judgment not subject to further appeal, all confidential documents under this Order, including copies, shall be returned to CCPO unless: (1) the document has been offered into evidence; (2) the parties agree to destruction in lieu of return; or (3) as to documents bearing the notations, summation, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the CCPO that it has done so. Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product, including an index which refers or relates to confidential documents, so long as that work product does not duplicate verbatim substantial portions of the text or images of confidential documents. This work product shall continue to be subject to the terms and conditions of this Order.

**IV.** **Conclusion**

For the reasons set forth above, CCPO's Motion to Quash Subpoena and for a Protective Order (Doc. No. 61) is granted in part and denied in part. CCPO's Motion is denied with respect to the documents provided to this Court for *in camera* review that reflect or reference communications, occurring prior to the Grand Jury proceedings or the first trial, between (1) Defendant Hyams and the CCPO; (2) the CCPO and SCCS; and/or (3) Defendant Hyams and SCCS. Disclosure of these documents is subject to the Conditions of Disclosure set forth above in Section III of this Opinion. CCPO's Motion is granted with respect to the remaining

documents provided by it to this Court for *in camera* review.

IT IS SO ORDERED.

                                                                        /s/ Greg White
                                                                        U.S. Magistrate Judge

Date: September 4, 2013