IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
                                                       : CASE NO.  1:10 CV 00609
JAMES VAUGHAN, III,                                    :
                                                       :
                                      Plaintiff,       : MEMORANDUM AND ORDER
                                                       : ADOPTING THE MAGISTRATE
                      -vs-                             : JUDGE'S REPORT AND
                                                       : RECOMMENDATION
                                                       :
CITY OF SHAKER HEIGHTS, *et al.*,                      :
                                                       :
                                      Defendants.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      The plaintiff, who was convicted of rape in Cuyahoga County Common Pleas Court, was later acquitted after being granted a new trial. He filed this lawsuit alleging that the detective who investigated the facts underlying the alleged crime violated the federal constitution and state law by failing to disclose exculpatory evidence. The defendants moved for summary judgment on the grounds of qualified immunity. In a Report and Recommendation dated 27 October 2014, United States Magistrate Judge Greg White recommended that summary judgment be granted in the

defendants' favor. The plaintiff now objects to the Magistrate Judge's recommendation. For the reasons that follow, the Court concludes that plaintiff's objections have no merit. The Magistrate Judge's Report and Recommendation is accordingly adopted in its entirety.

## I.

This Court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." Local Rule 72.3(b). The failure by either party to file specific objections constitutes a waiver of the right to appeal the Magistrate Judge's recommendations. Thomas v. Arn, 474 U.S. 140, 155 (1985); Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508–09 (6th Cir.1991). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir.1995).

## II.

No party has objected the Magistrate Judge's description of the factual background to this matter.[1] It is accordingly adopted in full by this Court and reprinted here, with citations and footnotes omitted:

> On September 10, 2006, Serena Miller and her nine-year old daughter, M.M., were visiting Kelly Ross, who resided at 3598 Palmerston Road, Shaker Heights, Ohio. Ms. Miller and Ms. Ross were drinking and conducting a seance in the hopes of contacting their deceased mothers.
>
> [Plaintiff James Vaughan, III] and a friend of his were also present. Ms. Miller kept M.M. awake for much of the night in the event that contact was made with Ms. Miller's deceased mother. At some point during the early morning hours of September 10th, however, M.M. fell asleep. Vaughan carried M.M. to the bedroom, and returned a

---

[1] See Report and Recommendation, Doc. 116, pp. 4-12.

few minutes later.

Shortly thereafter, M.M. came out of the bedroom crying and asked to speak with her mother. As set forth in Ms. Miller's written statement to police dated September 10, 2006, M.M. "told [Ms. Miller] that she pretended to be asleep and when [Vaughan] put her to bed he put his fingers in her panties." Ms. Miller told Ms. Ross what M.M. had reported, and Ms. Ross told Vaughan and his friend to leave. Ms. Ross then called the Shaker Heights Police Department.

The Shaker Heights police dispatch report indicates "Kelly Ross called police to report that a juvenile female staying at her home had been touched and possibly penetrated anally by a male." Shaker Heights police officer Jody Srsen responded and arrived at the Palmerston residence shortly after Ms. Ross' call. Officer Srsen testified she remained at the residence for approximately 45 minutes to an hour, during which time she spoke with Ms. Miller, Ms. Ross, and M.M. Ms. Miller reported to Officer Srsen that M.M. had told her (Ms. Miller) that "James Vaughan had put his hand into her panties and touched her private area." Officer Srsen's conversation with M.M. is summarized in Srsen's police report, as follows:

> I spoke with [M.M.] who related the following: She was sleeping but woke when James Vaughn [sic] was carrying her to the bedroom. As he was putting her down on the bed, she said that he put his hand into the side of her panties by the leg hole. She was not sure which leg. He touched her in the vaginal area with his fingers. She said that he put his finger into her anus. At that time she pushed away from him and he took his hand away and left the room. She said that she did not scream or call out because she was so frightened. She said that after he left the room she went and called her mother.

During her deposition, Officer Srsen testified the above was an accurate summary of the conversation she had with M.M. on September 10, 2006.

Officer Srsen then transported Ms. Miller and M.M. to University Hospitals Rainbow Babies & Children's Hospital for examination. There, M.M. was treated by pediatric emergency room resident Nicole Bailey and attending physician Haitham Haddad. Dr. Haddad testified that University Hospitals' protocol for handling allegations of child sexual abuse is for the doctor to gather all information about what allegedly occurred from the child's parent or guardian. He stated he did not interview M.M. but, rather, relied on information he obtained from Dr. Bailey and M.M.'s mother.

Dr. Bailey's report indicates a diagnosis of sexual assault and states "[n]eighbor placed fingers in pt's vagina and rectum." Dr. Haddad's written report also reflects the following history: "[t]he guy carried [M.M.] over to the bedroom and put her in bed and reportedly inserted his finger in her vagina and anus." Additionally, the record contains a

3

document entitled "Uniform Report for Child Protection," which Dr. Haddad testified is prepared by University Hospitals and submitted to the County. This document states that "[p]er the M.D., the pt disclosed she was vaginally penetrated by the suspected perpetrator's finger." M.M.'s examination did not reveal any physical injuries that were consistent with sexual assault. Dr. Haddad testified in deposition, however, that sexual assault does not always leave physical evidence. The hospital's records indicate M.M. was discharged on September 10, 2006 with a diagnosis of sexual assault.

Defendant Hyams was assigned to the case on September 11, 2006. That same day, he contacted Ms. Miller and advised her a complaint had been filed with the Summit County Department of Children's and Family Services ("Summit County DCFS"), and he would be working with Summit County DCFS in investigating the alleged crime.

Summit County DCFS assigned social worker Terrie Stout. On September 18, 2006, Ms. Stout contacted Defendant Hyams to advise him that Summit County DCFS had not yet made contact with Ms. Miller, despite attempts to call and visit her home. Later that day, however, Ms. Stout went to Ms. Miller's home and was able to meet with and conduct an assessment of M.M. Ms. Stout's written report summarizes her conversation with M.M. in relevant part, as follows:

> [M.M.] explained that she and her mom had spent the night at Kelly's house with Kelly and [Kelly's children.] [M.M.] said it was late at night when she and [another child] woke up and went to the dining room where her mom, Kelly, and the two guys were. [M.M.] could not identify either "guy" by name. She said they were in the dark and the candle was lit and that the lights had gone out. [M.M.] said she sat on her mom's lap then sat on "his" lap where she fell asleep. [M.M.] then said she woke up when "he" was caring [sic] her to bed. She said she woke up because "it hurt." This worker asked "what hurt" and she said "he" had put his hands and fingers inside of her underpants. [M.M.] explained it was his hands and fingers and they were inside, not outside of her underwear. This worker asked "then what happened["] and she said he put his fingers inside of her. [M.M.] then said he tried to "stick his finger in the back of me." [M.M.] then stated she tried to "scoot up and away from him." M.M. said she thinks he then left because he "thought she was awake."

The following day, September 19, 2006, Defendant Hyams received a voice mail message from Ms. Stout. Defendant Hyams' police report summarized this message as follows:

> On 9/19/06 I received a voice mail from Terry Stout. Ms. Stout informed me she met with the victim. From Ms. Stout's perspective, the victim appears credible. During the interview with Ms. Stout, the victim stated she was sleeping and felt the suspect fondling her vagina and anus. Once the victim awoke, the suspect

4

quickly left the room.

Hyams spoke with Ms. Stout on September 20, 2006. He summarized this conversation in his police report as follows:

> On 9/20/06, I spoke with Ms. Stout. It's Ms. Stout's opinion a charge of rape may be hard to prosecute. Ms. Stout based her opinion on the lack of physical evidence and Ms. Miller's lack of proper care she provided to her child (i.e. drinking throughout the night, keeping the children awake until 6:00 a.m. for the seance, and allowing another to put her child to bed).

During deposition, Defendant Hyams testified Ms. Stout did not, at any point during his investigation, indicate to him that "the child denied penetration." Ms. Stout later closed her case file with a finding that the case was substantiated for fondling.

On September 21, 2006, Defendant Hyams met with Shaker Heights prosecutor Randy Keller and provided his complete case file regarding the incident involving M.M. Prosecutor Keller decided to charge Vaughan with gross sexual imposition ("GSI") in violation of Ohio Rev. Code §2907.05(A)(4), which involves sexual contact but does not require penetration. Vaughan was arrested on September 23, 2006.

The matter was bound over to the Cuyahoga County Grand Jury and thereafter handled by the County Prosecutor's Office. Hyams states that, "[w]hen cases are prosecuted by the Cuyahoga County Prosecutor arising out of arrests by the Shaker Heights Police Department, a Shaker Heights detective, not necessarily the assigned detective, would deliver a stack of files to the Cuyahoga County Prosecutor." Hyams believes that "someone would have delivered [Vaughan's] physical file to the Cuyahoga County Prosecutor." In addition, Hyams testified that, on October 3, 2006, he faxed "everything he had" in his case file to the County Prosecutor's Office. Specifically, Hyams avers that he faxed two sets of materials to that Office, including M.M.'s medical records and documents from the Shaker Heights Police Department file. In addition, Hyams prepared two Case Information Forms ("CIFs"), which he also faxed to the County Prosecutor's Office. In the sections on these forms calling for a "synopsis of the offense," Hyams wrote that Vaughan "digitally penetrated victim's vagina and anus. Victim is 9 years old."

The Cuyahoga County Prosecutor decided to seek an indictment for rape in violation of Ohio Revised Code 2907.02(A)(1)(b), which requires a showing that the victim was penetrated.Defendant Hyams appeared and testified before the Grand Jury. On October 11, 2006, the Cuyahoga County Grand Jury indicted Vaughan for rape. Vaughan, who was represented by defense attorney Joseph Dubyak, entered a plea of not guilty on October 25, 2006. On March 24, 2008, Vaughan waived his right to a jury trial and proceeded to bench trial before Cuyahoga County Court of Common Pleas Judge Joseph

Russo. Although it subpoenaed Ms. Stout, the State was unable to locate her and she did not testify at trial. Defendant Hyams was called, however, and testified regarding his investigation of the September 10, 2006 incident involving M.M. On March 27, 2008, Judge Russo found Vaughan guilty as charged.

Vaughan then obtained a new defense team, consisting of Gerald Gold and Ian Friedman. Vaughan thereafter filed a Motion for New Trial based (in part) on information obtained by an investigator who found and interviewed Ms. Stout. On March 12th and 17th, 2009, Cuyahoga County Court of Common Pleas Judge David Matia conducted a hearing on Vaughan's motion. During this hearing, Ms. Stout testified (among other things) that M.M. did not disclose penetration to Ms. Stout during her September 18, 2006 assessment. Ms. Stout also testified she "really did not see in this situation that any penetration occurred," and confirmed that, after her interview of M.M., she was confident. M.M. "was not penetrated in any form." Ms. Stout also testified that she told Defendant Hyams that M.M. did not disclose penetration.

At the conclusion of the hearing, on March 17, 2009, Judge Matia granted Vaughan's Motion for New Trial from the bench. In so ruling, he stated "[t]he argument that this Court finds compelling in regard to [Vaughan's] motion is that the testimony of Terrie Stout was not discovered during the course of discovery." Judge Matia noted that Ms. Stout "came into this court over two days and clearly stated that the alleged child victim, [M.M.], did not indicate that she was digitally penetrated either vaginally or anally." He further explained as follows:

> Mr. Vaughan was convicted of rape of a child which carries with it a life sentence. There is a big difference between rape of a child and mere gross sexual imposition which carries with it a maximum five year penalty. Miss Stout gave an unequivocal opinion in here or statement that contradicts what was testified to at trial by the victim. That is certainly evidence that might have changed the results or the verdict and that is what I'm basing my decision upon, the undiscovered testimony of Terrie Stout. That's it. That's all we really need to talk about here in the motion for new trial.

Vaughan's second criminal trial began on June 1, 2009, this time before a jury. On June 4, 2009, Vaughan was found not guilty of rape as charged in the original indictment.

### III.

As set forth in the third amended complaint, and as relevant here, the plaintiff names the City of Shaker Heights and Detective Douglas K. Hyams as defendants. The plaintiff alleges (1)

6

a Brady claim under § 1983 based on Detective Hyams's alleged failure to disclose exculpatory and impeachment evidence; (2) intentional infliction of emotional distress; and (3) indemnification as to the City of Shaker Heights.

The defendants move for summary judgment. (Doc. 90, 91). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000) (citing Northland Ins. Co. v. Guardsman Prods., Inc., 141 F.3d 612, 616 (6th Cir. 1998)).

The Magistrate Judge recommended summary judgment in favor of the defendants on all claims. This Court will address below the plaintiff's claims, the Magistrate Judge's recommendations thereto, and the plaintiff's accompanying objections.

*The Plaintiff's Brady Claim*

First, the plaintiff asserts that his right to due process was violated pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), when Det. Hyams allegedly "failed to disclose that Ms. Stout had told him that her assessment of M.M. had led her to conclude that Vaughan had never penetrated M.M." (Third Amended Complaint, at ¶98). He further maintains his right was violated because Det. Hyams "failed to disclose that he learned from Ms. Stout that M.M. never told her (Stout) that Vaughan had committed any act that supported the charge of rape, for which Vaughan was indicted and wrongfully convicted." Id.

Under Brady, "the suppression by the prosecution of evidence favorable to an accused . . .

7

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. While a prosecutor's duty to disclose is absolute, a police officer's duty to disclose extends only to information the exculpatory nature of which is "apparent." Moldowan v. City of Warren, 578 F.3d 351, 388 (6th Cir. 2009). There is no Brady violation "where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." Coe. v. Bell, 161 F.3d 320, 344 (6th Cir. 1998).

In this case, the Magistrate Judge concluded that there is suffcent evidence on the record to support the claim that Det. Hyams possessed exculpatory information.[2] However, the Magistrate Judge determined there was no Brady violation because Mr. Vaughan was aware of the "essential facts" that would have allowed him to obtain the exculpatory information at issue. The Magistrate Judge noted the following evidence in particular:

> Vaughan's lawyer was aware of Ms. Stout's identity and was aware that M.M. had been interviewed by Summit County DCFS. Further, Mr. Dubyak was aware of the importance of that interview, even going so far as to subpoena DCFS records relating to the September 10, 2006 incident. However, based on the mistaken beliefs that Ms. Stout would not speak to him and that Judge Russo had reviewed the DCFS records and found nothing exculpatory, Mr. Dubyak made no efforts to speak with Ms. Stout. Had he done so, it appears Ms. Stout would have spoken with him and told him that M.M. did not disclose penetration during the September 18, 2006 interview, just as she did when Vaughan's new defense team contacted her.

(Doc. 116, p. 37).

This Court agrees with the Magistrate Judge's Assessment. It is well-settled that Brady

---

[2]   The Court agrees with the Magistrate Judge and rejects the defendants' contention that the record fails to support the claim that the exculpatory value of the evidence would have been apparent to Det. Hyams, pursuant to Moldowan.

8

"does not apply to information that is not wholly within the control of the prosecution." Coe v. Bell, 161 F.3d 320, 344 (6th Cir.1998). In this instance, there is no evidence on the record to suggest that the information at issue here, i.e. Ms. Stout's assertion that there was no penetration, was in the exclusive control of the government. Except for counsel's mistaken belief that Ms. Stout would not have been available to him for questioning, nothing in the record suggests that counsel would have been prevented from discovering Ms. Stout's position on the details of the alleged crime. As noted by the Magistrate Judge, Ms. Stout repeatedly made herself available to an investigator hired by Mr. Vaughan's second legal team, and she answered his questions.

The Court rejects Mr. Vaughan's argument that the Magistrate Judge misconstrued the holdings of Coe v. Bell,[3] United States v. Todd,[4] Spirko v. Mitchell,[5] Army v. Collins,[6] and Byrd v. Collins.[7] The plaintiff maintains that these cases stand for the proposition that an individual alleging a Brady violation knows or should know "the essential facts permitting him to take advantage of the exculpatory information" only where he is either on notice that exculpatory evidence actually existed or where he had actually been provided with the exculpatory evidence he had claimed had not been disclosed. (Doc. 119, pp. 9-10). As such, the plaintiff contends, because he was not on notice that Ms. Stout had told Det. Hyams that there was no penetration in her opinion, he did not possess the essential facts that would allow him to take advantage of the

---

[3] Coe v. Bell, 161 F.3d 320 (6th Cir. 1998).

[4] United States v. Todd, 920 F.2d 399 (6th Cir. 1990).

[5] Spirko v. Mitchell, 368 F.3d 603 (6th Cir. 2004).

[6] Army v. Collins, 488 F. App'x 957 (6th Cir. 2012).

[7] Byrd v. Collins, 209 F.3d 486 (6th Cir. 2000).

9

exculpatory information. In the Court's view, Mr. Vaughan misreads the standard set forth in the above cases. As already described, there is no Brady violation where a plaintiff knows the essential facts that would allow him to take advantage of exculpatory information or where the information is not in the exclusive control of the prosecution. The Court is not persuaded that the above cases stand for the idea that in order to "know the essential facts," the plaintiff must necessarily know that the exculpatory information actually exists. Rather, as the Magistrate Judge described, in this instance, it is enough that Mr. Vaughan knew of Ms. Stout's identity and that Summit County Division of Children and Family Services had interviewed the victim of the alleged crime. The exculpatory information here was available to Mr. Vaughan "in a source where a reasonable defendant would have looked." Spirko, 368 F.3d at 610. Further, the information at issue here was not in the exclusive control of the government, since Ms. Stout would have availed herself to questioning had she been asked.

The Court overrules Mr. Vaughan's objection and accepts the Magistrate Judge's recommendation that summary judgment be granted in favor of the defendants as to the plaintiff's Brady claim.

*The plaintiff's claim of Intentional infliction of emotional distress*

The Magistrate Judge recommended summary judgment in favor of the defendants with respect to the plaintiff's claim of intentional infliction of emotional distress. The Magistrate Judge reasoned that because Det. Hyams had no duty to disclose the allegedly exculpatory evidence at issue, the detective's failure to make the disclosure was not "so outrageous and extreme beyond all bounds of decency" that it can be "characterized as utterly intolerable in a civilized community." This Court agrees. Therefore, and because the plaintiff fails to assert any

meaningful objection to this conclusion, the Magistrate Judge's recommendation is accepted.

*The plaintiff's indemnification claim against the City of Shaker Heights*

Finally, the Magistrate Judge concluded that because summary judgment was warranted as to the plaintiff's claims against Det. Hyam, the plaintiff's indemnification claim against the City of Shaker Heights is moot. The Court agrees.

**IV.**

For the reasons stated above, the Magistrate Judge's Report and Recommendation is adopted. The defendants' motions for summary judgment are granted. (Resolving Doc. 90, 91). Plaintiff James Vaughan's partial motion for summary judgment is denied. (Resolving Doc. 95).

IT IS SO ORDERED.

                                              /s/ Lesley Wells
                                              UNITED STATES DISTRICT JUDGE

Date: 14 April 2015